BUFFINGTON ET UX. *v.* WENTZ ET AL.

[No. 156, September Term, 1961.]

---

**5.** Cf. Friedman, Ency., Real Estate Appraising, pp. 89, 497-500.

*Decided March 12, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Henry A. Babcock,* with whom were *Babcock & Green* on the brief, for the appellants.

*Vance V. Vaughan* for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellants, John W. Buffington and wife, brought this

suit at law against one John A. Wentz, a real estate broker, and his wife and against the appellee, Glens Falls Insurance Company, as the surety on Wentz's statutory bond as a real estate broker. Wentz and wife did not defend the suit and judgment was entered against them for $3,874.62 and costs ($12.25) on March 18, 1958. An agreement and stipulation filed on January 28, 1959, was entered into between the Buffingtons, the Wentzes and the Insurance Company, under which the Wentzes paid $2,000 and agreed to pay $1,000 on January 30, 1960 and $750 on January 31, 1961. The Buffingtons were to accept these payments in full satisfaction of their judgment, and their action against the Insurance Company was to be held in abeyance pending payment or default by the Wentzes. The Circuit Court approved a continuance in accordance with the stipulation. The Wentzes defaulted on the January 30, 1960 payment and the Buffingtons thereafter pressed their claim against the Insurance Company. The case was tried before the court without a jury and, by stipulation, was submitted in part on testimony taken before another judge and in part on depositions. The court upheld the claim of the Buffingtons against the Insurance Company to the extent of a $200 deposit (and interest thereon) which Wentz either received or should have received from an associate (Mrs. Womeldorf) under a contract of sale, but otherwise denied their claim against the Insurance Company. The Buffingtons appeal from the resulting judgment.

Wentz was a real estate broker and a builder. He built some houses in a subdivision known as Sportland Heights in Prince George's County. The Buffingtons lived in or near this subdivision and were the owners of eight undeveloped lots in it designated as Nos. 19-26 in Block B. They came to know Wentz in or about 1955 and employed him to sell their eight lots. Whether this employment antedated the contract of November 17, 1955, referred to below, is not clear.

On August 29, 1955, Wentz, as seller, entered into a contract with one Curley, a part-time real estate salesman employed by Wentz, for the sale of four of the Buffingtons' lots (Nos. 23-26). What authority, if any, Wentz had at that time to sell these lots is not shown. It appears that the price of the

lots was $3,000, that Curley was to obtain Veterans' Administration financing in the amount of $18,000 and that Wentz was to build a house on the property for Curley. Curley paid $2,000 in cash as a deposit against the purchase price, and settlement was to be made within 30 days.

On November 17, 1955, Wentz, as broker, submitted to the Buffingtons and they accepted and signed a proposed contract for the sale of all eight of their lots to a Mrs. Womeldorf, who was a real estate agent employed by Wentz. The sale price of the lots was to be $3,475 and settlement was to be made in cash in 120 days. Mr. Buffington's testimony indicated that he had some information which led him to think that Mrs. Womeldorf and Wentz "were in the real estate business at one time, but I was taking a lot for granted, I guess." The contract recited that a deposit of $200 had been paid to Wentz, but his testimony was vague as to whether he had actually received it or not. Neither the Curley nor the Womeldorf contract provided for commissions to Wentz. He stated that he did not charge commissions on sales to his employees.

On January 25, 1956, Wentz and his wife applied to a building and loan association for a construction loan of $11,500 on lots Nos. 19-22, which was approved by the association in that amount on February 17, 1956.

On March 19, 1956, which was the date fixed for settlement under the Womeldorf contract, Wentz told the Buffingtons that he was going to take the eight lots instead of Mrs. Womeldorf and would give them, and did give them, his note dated March 19, 1956, for the purchase price of $3,475, payable with 6% interest within 120 days from date or on completion of the sale of houses. On June 6, 1956, Curley and wife applied to the building and loan association for a loan of $18,000 on lot Nos. 23-26 and the house thereon, title to which was stated to be in Wentz. This application was approved on June 15th.

On June 22, 1956, Wentz obtained a deed from the Buffingtons conveying the eight lots to Wentz and wife.

The bond upon which the present claim is based is a statutory bond in the amount of $5,000 required of real estate brokers under what is now Code (1957), Art. 56, § 217(b)

(§ 224 (b) of the 1951 Code, as amended by Ch. 631 of the Acts of 1955). It is on a form of the Real Estate Commission of Maryland and was executed by Wentz, as principal, and the Insurance Company, as surety, on September 3, 1955, and ran for a term of one year. It was conditioned as follows:

> "[T]he condition of this obligation is such that if the principal shall conduct (himself) * * * and (his) * * * business in accordance with the requirements of the said Laws of Maryland, then this obligation shall be null and void; otherwise to remain in full force and virtue and any person aggrieved thereby shall have, in addition to his right of action against the principal hereof, a right to bring suit against the surety on this bond, either alone or jointly with the principal hereof, and to recover in an amount not exceeding the penalty of this bond any damages sustained by reason of any act, representation, transaction, or conduct of the principal which may be prohibited by said Act or enumerated as one of the causes for suspension or revocation of a license granted thereunder."

The trial judge was of the opinion that Wentz had a duty to disclose to his principals "all relevant facts and especially his interest in the transaction," and that if the case disclosed nothing further than the Womeldorf contract, Wentz's acquisition of the property directly or indirectly pursuant thereto would create a breach of his duty to the Buffingtons and would make his surety liable for any damages to them which might flow from the contract. However, he was further of the opinion that when the Buffingtons, with knowledge that Wentz had an interest in the property adverse to theirs, conveyed the property to him, this knowledge abrogated "the *quasi*-confidential relationship which had existed * * * between them as broker and client," that they accepted him as the buyer and that "any concealment by Wentz of the earlier facts affecting himself, Mrs. Womeldorf, or Mr. Curley were no longer of any consequence."

We agree with the learned trial judge that the broker was under a duty to make full disclosure to his clients of all of the relevant facts which might influence the judgment or action of his principals. *Hardy v. Davis,* 223 Md. 229, 232, 164 A. 2d 281; *Coppage v. Howard,* 127 Md. 512, 523, 96 A. 642; *Slagle v. Russell,* 114 Md. 418, 427, 80 A. 164; *Restatement, Agency, Second,* §§ 381, 389, 390; 8 Am. Jur., *Brokers,* §§ 89, 91; 12 C.J.S., *Brokers,* § 7. Though the evidence in this case as a whole is rather scanty and in a number of respects very vague, we think that it supports the conclusion that Wentz was the real purchaser under the Womeldorf contract, and it seems clear that this was not disclosed to the Buffingtons either when the Womeldorf contract was signed by them or when they agreed to Wentz' becoming the purchaser in March, 1956. How much, if any, effect should be given to this particular non-disclosure after the Buffingtons agreed to accept Wentz as the purchaser is a question which we think it unnecessary to decide because of our conclusion stated below with regard to the Curley transaction.

It is clear that Wentz had been in negotiations with Curley for the sale of four of the Buffington lots and had obtained a $2,000 cash deposit thereon long before the Womeldorf contract was signed. It also seems clear that this information was not disclosed to the Buffingtons at any time prior to their conveyance of the eight lots to Wentz and wife on June 22, 1956. We think that this information was material and would have affected the judgment of the Buffingtons as to every one of the three transactions subsequent to the Wentz-Curley contract in which the Buffingtons participated—the Womeldorf contract, the acceptance of Wentz as a substitute purchaser and the granting of substantial additional time to him to make payment over and above the time allowed under the Womeldorf contract (that time having expired on the date when Wentz gave his note) and the conveyance of the eight lots to Wentz and wife without any actual payment to the Buffingtons and in reliance on Wentz's unsecured note, which was far from clear as to the date of payment. We are accordingly of the opinion that the non-disclosure of full information with regard to the Wentz-Curley contract was a breach of

Wentz's duty as a broker to make full disclosure to his clients, the Buffingtons. See the authorities cited in the preceding paragraph, particularly § 390 of the *Restatement, Agency, Second.* See also *Cochrane v. Wittbold,* 359 Mich. 402, 102 N. W. 2d 459. This breach of duty constituted, we think, a breach of the condition of the bond, since it amounted to cause for the revocation of his license under either or both § 224 (r) and § 224 (s) of the Real Estate Brokers subtitle of Art. 56 of the Code (1957), (Art. 56, §§ 231 (q) and 231 (r) of the 1951 Code as amended by Ch. 631 of the Acts of 1955). Section 224 (r) deals with non-disclosure of "any material fact, data, or information, concerning or relating to the property with which [a] * * * licensee is dealing." Section 224 (s) deals with "[a]ny act or conduct whether of the same or a different character than hereinabove specified which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent, or improper dealings."

We are also of the opinion that Wentz's breach of duty as a broker was a cause of the loss which his clients sustained. It is hardly to be supposed that they would have accepted him as a purchaser, would have accepted his unsecured note, and would have conveyed their property to him (and his wife), if they had known that he had undertaken to sell a part of their property as his own and had pocketed a cash deposit of $2,000 which he had received as a result of that transaction.

We accordingly hold that there was a breach of the condition of the bond, that loss resulted therefrom, and that the broker's surety is liable under the bond. For a collection of cases dealing with the liability of a surety under more or less comparable statutory bonds, see Annotation, *Liability on Broker's Bond,* 17 A.L.R. 2d 1012.

The judgment of the Circuit Court is reversed and judgment is entered for the appellants against the appellee Insurance Company in the amount of $2,068.35, with interest at 6% from January 18, 1959, such amount being arrived at as follows:

Amount of judgment against Wentz and wife,
March 18, 1958 ......................... $3,874.62

Interest thereon at 6% from March 18, 1958 to
    January 18, 1959—10 months ............    193.73

                                               $4,068.35
Less amount paid by principal, Wentz, January
    18, 1959 ...............................    2,000.00

                                               $2,068.35

The above amount, including interest thereon for something
over three years is well within the $5,000 limit of the bond.
Of course, the $200 item and interest thereon for which re-
covery was allowed in the Circuit Court is superseded by the
judgment entered herein.

> *Judgment reversed; and judgment en-*
> *tered for the appellants and against*
> *the appellee Glens Falls Insurance*
> *Company in the amount of $2,068.35,*
> *with interest at 6% from January 18,*
> *1959; costs in the circuit court and*
> *in this court to be paid by Glens Falls*
> *Insurance Company.*