### NATIONAL GRANGE MUTUAL INSURANCE COMPANY OF KEENE, NEW HAMP-SHIRE *v.* DOROTHY P. LONDON

[No. 527, September Term, 1972.]

*Decided June 4, 1973.*

The cause was argued before POWERS, CARTER and GILBERT, JJ.

*Edward C. Mackie,* with whom were *Thomas G. Andrew* and *Rollins, Smalkin, Weston & Andrew* on the brief, for appellant.

*Alexander R. Martick* for appellee.

POWERS, J., delivered the opinion of the Court.

This case requires us to determine whether certain wrongful acts by a licensed real estate broker are covered by his bond. The surety contends that the acts did not require the individual doing them to hold a broker's license, and that the coverage of the bond is no broader than the license requirements.

In 1968 Warren S. Shaw was in the real estate business in Baltimore, operating personally and through two corporations, Manning-Shaw Realty, Inc. and Eutaw Realty Corporation, in each of which he was a principal officer. He was the holder of a real estate broker's license, issued by the Real Estate Commission of Maryland. The Commission,

after an unrelated complaint and a hearing, had ordered Shaw's license revoked, but when he filed a proceeding in the Superior Court of Baltimore City to review the Commission's order, the revocation had been stayed, upon Shaw's posting of a $25,000.00 bond in addition to the regular bond of $5,000.00 then required of all licensed brokers. National Grange Mutual Insurance Company of Keene, New Hampshire was the corporate surety on both of Shaw's bonds.

We shall briefly summarize the significant facts which were shown in the evidence. Dorothy P. London was engaged in the insurance business in Baltimore. A long time friend and sometime co-worker, Juanita McIntosh, told her that she knew that Shaw, a real estate broker, would be willing to pay a substantial bonus if Miss London would put up some money for 90 days in connection with certain pending real estate transactions. Although it was not disclosed to Miss London, the evidence showed that Shaw had serious financial problems, among which was a substantial debt he owed to Mrs. McIntosh. He had asked Mrs. McIntosh to try to find him some money. It is clear that Mrs. McIntosh was acting for Shaw in soliciting Miss London for the transactions which followed.

On 16 May 1968, Miss London drew two checks, each payable to Warren S. Shaw, each for the sum of $2,500.00. They were identical except that on one she typed the notation, "re: 4221 Fernhill Avenue" and on the other, "re: 3513 Springdale Avenue". Mrs. McIntosh signed a receipt which read:

> "Received of Dorothy P. London, check made to Warren S. Shaw for twenty-five hundred dollars ($2500.) for contract on 3513 Springdale Ave., Baltimore, Md. This contract to be settled in 90 days with a guarantee of $250. profit.
> Received of Dorothy P. London twenty-five hundred dollars for contract on 4221 Fernhill Ave., Baltimore, Md. This contract to be settled in 90 days, with a guarantee of $250.00.

Contracts to be delivered by J. B. McIntosh by May 17, 1968."

Within a day or so Mrs. McIntosh delivered to Miss London two land installment contracts, each of which covered the sale of the leasehold interest in a house and lot in Baltimore, subject to a ground rent. In one, dated 12 March 1966, Manning-Shaw Realty, Inc. had agreed to sell 4221 Fernhill Avenue to George E. Barnes and wife, and in the other, dated 16 September 1967, Eutaw Realty Corporation had agreed to sell 3513 Springdale Avenue to Henry Stephenson and wife. Each agreement specified a selling price and the terms of payment. Each also gave the seller the right to mortgage and to maintain a mortgage or mortgages on the property. Neither showed what if any mortgages the seller had placed on the property.

On each of the two contracts an endorsement was added transferring all of the right, title and interest of the seller to Dorothy P. London. Miss London testified that she did not understand the meaning of the contracts, except that upon settlement, within 90 days, she would be repaid her money plus the guaranteed profit. It was shown that subsequent mortgage foreclosures wiped out any equity that Shaw's corporations may have had in the leaseholds, and Miss London received nothing.

There was also evidence that of the $5,000.00 put up by Miss London, Shaw paid Mrs. McIntosh $2,000.00 on account of his indebtedness to her, and the other $3,000.00 went into an account of one of the corporations. It was not traced further.

Miss London filed suit for damages for deceit, naming as defendants Shaw, his two corporations, his surety, Mrs. McIntosh, the broker under whom she held a real estate salesman's license, and each of their sureties. The trial of the case resulted in a jury verdict in her favor in the amount of $6,200.00 against Shaw, his two corporations, and his surety. Only his surety, National Grange, appealed from the judgment entered on the verdict against it.

The one question presented in appellant's brief is:

"Was the transaction by which Warren Shaw obtained $5,000.00 from Dorothy London an act constituting a person a real estate broker as defined in Art. 56, par. 212(e) of the Annotated Code of Maryland?"

Appellant's oral argument may be summed up by its assertion that Shaw was not acting as a real estate broker in the act of bilking Miss London.

The effect of these contentions is to question the propriety of the denial of appellant's motion for a directed verdict at the trial. We think Shaw was acting as a licensed broker, and that the denial of appellant's motion below was correct.

The Court of Appeals, in *Smirlock v. Potomac,* 235 Md. 195, 200 A. 2d 922, said, at page 202:

"We now hold that the Real Estate Brokers subtitle of Art. 56 of the Code (1957, as amended) is a regulation for the benefit of the public."

See also *Thorpe v. Carte,* 252 Md. 523, 250 A. 2d 618, at page 527, and *Zalis v. Blumenthal,* 254 Md. 265, 254 A. 2d 692, at page 267.

In *Buffington v. Wentz,* 228 Md. 33, 178 A. 2d 417, a suit against the surety on the bond of a licensed broker, the Court of Appeals held that the broker had breached his duty to make full disclosure to his clients, and said, at page 39:

"This breach of duty constituted, we think, a breach of the condition of the bond, since it amounted to cause for the revocation of his license under either or both § 224 (r) and § 224 (s) of the Real Estate Brokers subtitle of Art. 56 of the Code (1957), (Art. 56, §§ 231 (q) and 231 (r) of the 1951 Code as amended by Ch. 631 of the Acts of 1955). Section 224 (r) deals with non-disclosure of 'any material fact, data, or information, concerning or relating to the property with which [a] * * * licensee is dealing.'

Section 224 (s) deals with '[a]ny act or conduct whether of the same or a different character than hereinabove specified which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent, or improper dealings.' "

The answer to appellant's question is found in Code, Art. 56, § 212. Subsection (a) defines a real estate broker, in part, as:

" * * * any person, association, copartnership or corporation foreign or domestic, who for another and for a fee, commission or *any other valuable consideration* sells, purchases, exchanges, leases, rents or collects rent for the use of real estate * * * or who is regularly engaged in the business of dealing and trading in real estate or leases and options thereon * * *." (Emphasis supplied).

Subsection (d) defines real estate to include leaseholds. Subsection (e) provides:

"Any person, partnership, association, or corporation, who, for another, in consideration of compensation, by fee, commission, salary, *or otherwise*, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, does, offers or attempts or agrees to do, engages in or offers or attempts or agrees to engage in, either directly or indirectly, *any single act or transaction* contained in the definitions of a real estate broker or real estate salesman in subsections (a) and (b) of this section, *whether said act be an incidental part of a transaction, or the entire transaction*, shall constitute such person, partnership, association, or corporation a real estate broker or real estate salesman within the meaning of this subtitle." (Emphasis supplied).

We are satisfied from the evidence that Shaw engaged in two transactions with Miss London, one for each of two

separate corporations. We are equally satisfied that at least an incidental part of each transaction was the sale of a leasehold, and that there was a consideration flowing to Shaw in these transactions.

To engage in these transactions he was required by the statute to hold a license as a real estate broker. It is not questioned that Shaw's transactions with Miss London constituted "dishonest, fraudulent, or improper dealings", Code, Art. 56, § 224 (s). Under § 224 (a) those acts empowered the Commission to revoke his license, *Buffington v. Wentz, supra,* and constituted a breach of the condition of his bonds. It follows that Miss London, as a member of the public who sustained a loss because of such dealings by the licensed broker, is entitled to recover her loss from the surety on the broker's bond.

*Judgment affirmed.*
*Appellant to pay costs.*