## JAMES C. HARLAN *v.* J. CLINTON SIMERING.
### [No. 69, October Term, 1932.]

*Decided January 12th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

610

*Alexander Armstrong* and *Wendell D. Allen,* with whom were *H. Vernon Eney* and *Armstrong, Machen & Allen* on the brief, for the appellant.

*Walter L. Clark* and *Roszel C. Thomsen,* for the appellee.

URNER, J., delivered the opinion of the Court.

The declaration in this suit alleges, in one of its counts, that the defendant, a licensed real estate broker in Baltimore City, agreed with the plaintiff that if he informed the defendant of prospective purchasers of properties with whom the defendant thereafter negotiated sales as broker for the owner, and earned commissions on such sales, the defendant would pay to the plaintiff, as compensation for his services in so informing the defendant of such prospective purchasers, a sum equal to one-half of whatever amount the defendant received as commissions in the transactions; that the defendant was interested as broker in securing purchasers for a tract of land, in Baltimore City, containing about fourteen and one-half acres, owned by the Baltimore Brick Company, and the plaintiff, in reliance upon his agreement with the defendant, informed the latter that Maurice Shapiro and John D. Roney were prospective purchasers of the property so desired to be sold, and the defendant, accepting and using that information, entered into negotiations which resulted in the execution of a written contract of sale between the Baltimore Brick Company as vendor, and Maurice Shapiro and John D. Roney as purchasers, on account of which sale the defendant received commissions amounting to $6,162.50; and that the plaintiff thereupon became entitled to be paid by the defendant, under their agreement, the sum of $3,081.25, but was paid only $100 by the defendant, who refuses to pay the remainder.

The trial of the case terminated in a directed verdict for the defendant at the close of the testimony which the plaintiff produced. The ground upon which the court withdrew the case from the jury was that the plaintiff is precluded by statute from maintaining the action because he was not a licensed real estate broker. It is argued for the defendant

that the court's instruction is supportable upon the further ground that the evidence is legally insufficient to prove any service by the plaintiff for which he is entitled to the claimed compensation. The only exception pressed on this appeal was taken because of the ruling by which a verdict for the defendant was directed.

The evidence in the case is legally sufficient to prove the agreement and the services alleged in the declaration. It was testified by the plaintiff that he entered into such an agreement, and that in pursuance of it he obtained and reported the information upon which the defendant acted in opening negotiations with the eventual purchasers. According to the testimony of Mr. Shapiro, who acted for Mr. Roney as well as for himself in making the purchase, the plaintiff was the first one who suggested to him that he buy the Baltimore Brick Company property. At the interview in which that suggestion was made, Mr. Shapiro asked to see a blueprint of the property, and the plaintiff returned with the defendant and the blueprint on the same or succeeding day. From that time the defendant, as broker for the owner, conducted negotiations leading to the contract of sale upon the basis of which the defendant received $6,162.50 as commissions. In a letter to the plaintiff while he was in a hospital for observation as to a war service disability, the defendant mentioned the fact that he had sold the Baltimore Brick Company property to Shapiro and Roney.

It appears from the testimony that the defendant had previously been in communication with Mr. Shapiro in regard to a proposal for the erection of a building to be leased to prospective tenants whom the defendant represented, but that negotiation apparently had no reference to the purchase by Mr. Shapiro and his associate of any property which the defendant as broker desired to sell. Their contract of purchase, in consequence of which the defendant was paid commissions, resulted, according to legally adequate evidence, from a negotiation which had its origin in a service rendered by the plaintiff for the defendant in pursuance of their agreement.

The statute which is said to bar the plaintiff from the enforcement of his claim is as follows: "It shall be unlawful for any person, corporation or co-partnership of persons to carry on the business of real estate broker in the City of Baltimore without first obtaining such license as is prescribed by section 695, of this article. Any person, corporation or co-partnership who shall in Baltimore City on behalf of another for reward or remuneration of any kind undertake to purchase, sell, lease, mortgage, exchange or deal in real estate or any interest therein, shall be deemed to be carrying on the business of real estate broker within the contemplation of this article. And every contract, agreement or undertaking hereafter made by any person to pay such unlicensed person, corporation or co-partnership a commission, or other remuneration of any kind for such undertaking shall be unenforceable and void." Code of Public Local Laws, art. 4, sec. 699A.

Prior to the transaction to which this suit relates, the plaintiff had been employed for a period of eight or nine weeks by the Johns Hopkins Hospital trust estate in securing tenants for its industrial properties. While so engaged he was associated with the defendant, who was the hospital's real estate officer. The plaintiff's reports of his activities for the hospital trust were made to the defendant, who provided him, at the expense of the hospital, with cards, for use in that work, on which appeared his name, a business address identical with that of the defendant, and the words "Industrial Real Estate." In the course of that employment the plaintiff came in contact, as he testified, with persons who, while not then desiring to rent any of the Hopkins industrial buildings, indicated that they might be interested in purchasing certain of the properties some time in the future. It then occurred to the plaintiff that the information thus obtained by him might be of value to the defendant in his real estate brokerage business. This was the origin of the suggestion that resulted in the agreement described in the plaintiff's testimony.

The only sale to which the plaintiff appears to have contributed was the one with which this suit is concerned. When the negotiation for that sale began, his employment by the

hospital trust had been discontinued, and we accept the defendant's view that the plaintiff could not then be regarded as his employee. Apart from the Baltimore Brick Company sale, his service was limited to several reports to the defendant, and efforts to aid him in regard to sale prospects which were not realized. Shortly after his interview with Mr. Shapiro, the plaintiff entered a hospital, as already mentioned, and upon leaving it he returned to the roofing business in which he had formerly been engaged. At the period of the sale in question he was not undertaking, as a business, to "purchase, sell, lease, mortgage, exchange or deal in real estate," and was not subject, in our opinion, to be classified as a real estate broker within the statutory description.

In *Kolb v. Burkhardt,* 148 Md. 539, 129 A. 670, 672, the opinion of the court, written by Judge Parke, after quoting the definition in the Code section to which we have referred, and a similar definition in section 696, which provides penalties, said: "The sensible and natural conclusion of the intent of the Legislature, as gathered from the cause and necessity of the act, and from a consideration of all its parts, is that these definitions are (1) an enumeration of the various forms of business activities which should be considered as included within, or as separately constituting, the business of a real estate broker, and (2) a bringing within the scope of the statute any person, corporation, or copartnership undertaking in Baltimore for a reward to carry on as a business any or all of the forms of activities specified, but that the performance by an unlicensed person of a single, isolated act or transaction, pertaining to the business of a real estate broker, as defined by the statute, but unaccompanied by an intention or an attempt to engage in any form of such business, would not be sufficient to bring the unlicensed person within the denunciation of the statute."

In that case the vendor was sued for commissions under his direct agreement with the unlicensed plaintiff who negotiated the sale of the defendant's property. The suit was held to be maintainable because the service for which the plaintiff claimed the commissions agreed upon was rendered in the

614

performance of a single undertaking not involved in the prosecution by the plaintiff of a real estate broker's business. The present action is not against any of the parties to the sale to which the plaintiff's claim relates. It is a suit against a real estate broker upon his alleged agreement to pay the plaintiff a stated compensation for the particular service described. Since the plaintiff, in performing that agreement, was not acting as a real estate broker within the meaning of the statute, as we understand its terms and the testimony in the case, there appears to be no just reason why his claim should be denied unless the evidence produced in his behalf should fail to outweigh the defendant's proof when the case is fully tried.

*Judgment reversed, with costs, and a new trial awarded.*