## BALILES *v.* BRYANT
[No. 116, October Term, 1954.]

*Decided June 9, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS and HAMMOND, JJ.

*C. Maurice Weidemeyer,* with whom was *Basil E. Moore, Jr.,* on the brief, for the appellant.

No brief and no appearance for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the plaintiff below from an order granting a motion for a judgment *non obstante veredicto* and directing the entry of judgment for the defendant. The suit was brought to recover one-half of the commissions on the sale of several lots improved by a cottage at Beverly Beach. The plaintiff-appellant, Mrs. Lottie V. Baliles, was a real estate salesman who had been employed by the defendant-appellee, George E. Bryant, a licensed real estate broker. The sale price of the property was $15,000, commissions thereon at 5% amounted to $750, and there was no dispute that, if the plaintiff was entitled to recover at all, she was entitled to one-half of the commissions, namely, $375.

There was some question as to whether or not the plaintiff was authorized to act as a real estate salesman at the time when the contract of sale was entered into. The appellee has blown hot and cold on this question. Though there was much testimony on the subject, during the cross-examination of the appellee his counsel denied that the appellee was "making a contention about the license," but in his motion for a directed verdict he specifically invoked Code (1951), Article 56, Section 235, which bars suits for compensation for any act or service the doing or rendering of which is prohibited to persons other than licensed real estate brokers or salesmen, unless the person asserting the claim was duly licensed as such broker or salesman prior to the time of offering to perform any such act or service or of procuring any agreement for the payment of compensation for such

act or service. However, the appellee took no exceptions to the instructions of the trial court relating to this (or any other) phase of the case, nor did his motion for a judgment *n. o. v.* refer to this question. Since the appellee filed no brief and was not represented in this Court, his position on this point remains somewhat obscure; but his failure to renew his objection on this score in his motion for a judgment *n. o. v.* strongly suggests that he abandoned the point and thereby returned to the position formerly stated by his counsel.

Whatever his ultimate position may have been, the record shows that the plaintiff was duly licensed as a real estate salesman in the employ of the defendant in 1952. Her license expired on April 30, 1953, and there was testimony on her behalf that at the end of April or in the first part of May she paid over to the defendant the amount of the $5.00 license renewal fee for transmission to the Real Estate Commission. He denied this, but certainly the conflict of testimony was sufficient to take this issue to the jury, if the license had to be renewed at all prior to the date of the contract of sale which gives rise to this suit. If the plaintiff's lack of a renewal of her license was due to the failure of the defendant to send in her application and renewal fee, he would, we think, be estopped to raise the objection, even though the renewal was not actually issued until October, 1953, as appears to have been the case. The trial court submitted the case to the jury on instructions substantially in accordance with these views, and the verdict of the jury was in favor of the plaintiff.

We find it unnecessary in view of the foregoing to decide the question as to whether or not it would have been necessary for the plaintiff to apply for a renewal before the date of the contract of sale in order to avoid the bar of Section 235 of Article 56 of the 1951 Code. This would involve the construction of Sections 234, 235, 237 and 238. See an interesting annotation on the effect of the absence of a license as affecting a broker's right to compensation in 169 A. L. R., beginning at 767,

and the case to which that annotation is appended, which involved a somewhat different statute from that in force in Maryland.

On the merits of the claim we think that the same rule is to be applied as between the defendant employer-broker and the plaintiff employee-salesman as would apply between an owner and a broker. See *Bowie v. Martin,* 199 Md. 58, 85 A. 2d 786, where the same rule was applied as between a broker to whom the owner had an exclusive agency and another broker who asserted an agreement with the first broker under which the second claimed to be entitled to one-half of the commissions on a sale of the property there in question.

There was a conflict in the testimony as to whether or not the plaintiff was the procuring cause of the sale. The purchasers were a Mr. and Mrs. Collison who lived in the vicinity of the cottage which they contracted to buy. The defendant testified that negotiations leading up to the contract originated from prior conversations in which Mr. Collison had asked him to be on the lookout for a cottage for him and from his (Bryant's) telephoning Mr. Collison about the cottage on the day when he was authorized to sell it and before he had even put up a sign on it. He contended that Mrs. Baliles had nothing to do with effecting the sale. Mr. Collison testified that he was familiar with the cottage, as he had helped to build it about seventeen or eighteen years previously and had done other work on it from time to time thereafter. He also testified that he saw two brokers' signs on the property—Mr. Bryant's and another's—on the morning of he day after Mr. Bryant had been authorized to list the property. Mr. Bryant's testimony showed that he knew the property was also to be listed with the other broker, a Mr. Criser, and there seems to be no doubt that it was. Mr. Collison further testified that after seeing the two brokers' signs on the cottage, he went at once to Mrs. Baliles' office, which was nearby, that he knew that she worked for Mr. Bryant and that he wanted her to get one-half of the commission on the

sale. It appears that the plaintiff and Mr. Collison were friends, and each of them testified that she was a customer of his store at Beverly Beach. Mr. Collison stated he wished to throw business her way as a matter of reciprocity. Mrs. Baliles and Mrs. Collison were not friendly, and Mrs. Baliles had no direct dealings with Mrs. Collison in this matter.

It is clear from the testimony that the first news that Mrs. Baliles had that this cottage was for sale came to her from Mr. Collison after he had seen Mr. Bryant's sign. She did not know the offering price and she did not have a key to the cottage. However, she and Mr. Collison both testified that they went over together and looked at the property and that thereafter he then drove to Mr. Bryant's office to get the key and further information. Mr. Collison, who had worked for Mr. Bryant some years previously, testified that he told Mr. Bryant on this visit that he wanted Mrs. Baliles to have her share of the commission, and that Mr. Bryant replied, "There's no doubt about that." He also testified that he and Mr. Bryant then came back to the cottage and that later in the day they both visited Mrs. Baliles at her office at Beverly Beach, but that nothing more was said at that time about commissions, as he thought it was all understood. Mrs. Baliles, on the other hand, testified that during the conversation in her office Mr. Collison told Mr. Bryant that he (Collison) "wanted me [Mrs. Baliles] to get the commission, that's why he was buying through him [Mr. Bryant], otherwise he would have bought through Mr. Criser." The credibility of the witnesses was, of course, for the jury.

No extensive citation of authority is needed in support of the rule that in deciding whether or not to grant a demurrer prayer or a motion for a judgment *non obstante veredicto,* the court should resolve doubts in favor of the plaintiff and should assume the truth of all evidence and such inferences as may naturally and legitimately be drawn therefrom which tend to support the plaintiff's right to recover. See, for example, *Beck v.*

*Baltimore Transit Co.,* 190 Md. 506, 58 A. 2d 909; *Kremer v. Fleetway Cab Co.,* 197 Md. 557, 79 A. 2d 853; *Stottlemyer v. Groh,* 201 Md. 414, 94 A. 2d 449.

Although the amount of work done or of the efforts made by the plaintiff to bring about the sale appears to have been very slight, we think that the evidence adduced by the plaintiff to show that the business came to the defendant through the plaintiff and that otherwise it would have gone to the other broker was sufficient to warrant the submission of the case to the jury and to sustain its verdict, and hence that the motion for a judgment *n. o. v.* ought not to have been granted and that the judgment for the defendant should be reversed.

However, a motion for a new trial was coupled with the defandant's motion for a judgment *n. o. v.* as permitted by Rule 8(a) of Part Three, Subdivision III of the General Rules of Practice and Procedure. This motion raised two points in addition to the question presented by the motion for judgment *n. o. v.*

These pertain to alleged misconduct affecting the jury. The motion for a new trial does not appear to have been ruled upon by the trial court. Under paragraph (c) of Rule 8 above referred to, and in accordance with the practice followed in *Kremer v. Fleetway Cab Co., supra,* and *True v. Westernport,* 196 Md. 280, 76 A. 2d 135, we shall remand the case for consideration by the Circuit Court of these two points raised by the motion for a new trial.

> *Judgment reversed, with costs, and case*
> *remanded for further proceedings.*