## SMIRLOCK, ETC. *v.* POTOMAC DEVELOP- MENT CORPORATION

[No. 285, September Term, 1963.]

196

*Decided June 8, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Thomas B. Yewell* and *Richard B. Bland,* with whom were *Welsh & Lancaster* on the brief, for appellant.

*Raymond Gittelman,* with whom was *Stanley R. Jacobs* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The principal question in this case is whether a real estate broker licensed in another State, but not licensed in Maryland and not holding a "single transaction" power of attorney, who seeks employment in this State for the sale and lease back of property situated in this State, and who conducts negotiations

here (followed up later elsewhere), with a prospective pur-
chaser which result in an agreement for the sale of the prop-
erty and its lease back to the seller, may recover, under our
laws relating to real estate brokers, a broker's commission for
his services, pursuant to an agreement for the payment thereof
made in this State. The Circuit Court for Montgomery County
(Moorman, J.) held that he could not, and the broker appealed.
We think that the holding of the trial court was correct. Ac-
cordingly, we find it unnecessary to consider the issue raised by
the seller as to whether an agreement had actually been reached
upon terms approved by it. Likewise, rulings on evidentiary
matters and upon a proffer which the appellant attempted to
make become of no importance, since they could not affect the
result.

The negotiations were initiated by a real estate broker named
Graef, who is licensed in New York and who is not a party to
this suit. After discussing with Dr. Solomon, the President of
Potomac Development Corporation (Potomac), the appellee,
Potomac's need for financing in connection with a real estate
project which it owned in Montgomery County, Graef got in
touch with the appellant, Smirlock, and Smirlock's agent, Leib-
ler, in New York. As a result, Leibler came to Potomac's of-
fice in Maryland in December, 1960, for a conference and the
next day brought into another conference at Potomac's office,
a prospective purchaser. An agreement, at least in general out-
line, for the sale of the property to this prospect and its lease
back to Potomac was arrived at during this conference, and
a memorandum of its terms was made by counsel for Potomac,
who was one of those present. This memorandum was not
signed by anyone. Also at one of these conferences in Mary-
land, Potomac's president agreed to a commission of $50,000
to Smirlock for his services in connection with the sale and
lease back. Several weeks later there were further negotiations
between the parties in New York, but no contract was ever
executed. There were a number of letters subsequently from
Smirlock to Dr. Solomon which, in general, insisted that an
agreement had been made and that it should be carried out.
(Copies of most of these were admitted in evidence; two were
excluded.) Smirlock and Leibler were each licensed as a real

estate broker in New York. Neither was, at the time of the negotiations, licensed as a real estate broker or salesman under Maryland law, and neither had a power of attorney from Potomac, such as is described in § 212(f) of Art. 56 of the Maryland Code (1957), *infra*.

The pertinent statutory provisions are contained in Art. 56 of the Code (1957) under the subtitle "Real Estate Brokers," and citations will be simply by reference to their section numbers, without repeating the Code Article.

§ 212 (a) includes within the meaning of the term "Real estate broker"

"any person * * * who for another and for a fee * * *, sells, purchases, exchanges, leases, [or] rents * * * real estate or who attempts * * * by verbal solicitation, advertisement or otherwise to perform any such function * * *."

§ 212 (b) defines a "Real estate salesman" as meaning

"any person licensed to perform on behalf of any licensed real estate broker any act or acts authorized by this subtitle to be performed by a real estate broker."

§ 212 (e) defining "Acts constituting [a] person [a] real estate broker or salesman" provides in part:

"Any person * * * who, for another, in consideration of compensation, by fee, commission, salary or otherwise, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, does, offers or attempts or agrees to do, engages in or offers or attempts or agrees to engage in, either directly or indirectly, *any single act or transaction* contained in the definitions of a real estate broker or real estate salesman in subsections (a) and (b) of this section, whether said act be an incidental part of a transaction, or the entire transaction, shall constitute such person * * * a real estate broker or real estate salesman within the meaning of this subtitle." (Italics supplied.)

§ 212 (f) excepts from the definitions of a "real estate broker" and "real estate salesman"

"(7) [a]ny person holding in good faith a duly executed power of attorney from the actual owner authorizing the sale and conveyance o[r] leasing of any real estate, where only one such transaction is involved; * * *".

§ 217 (a) prohibits carrying on the business of or acting in the capacity of a real estate broker or salesman in this State without first obtaining a license "as herein provided." § 217 (b) and (c) and §§ 218-223 deal with applications for licenses and the issuance thereof by the Real Estate Commission of Maryland. § 219, we may remark, contains so called reciprocity provisions for the issuance of licenses to nonresidents of this State who are licensed by other States.

§ 228 reads as follows:

"No action or suit shall be instituted, nor recovery therein be had, in any court of this State, by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this subtitle to other than licensed real estate brokers and real estate salesmen unless such person, copartnership, association or corporation was duly licensed hereunder as real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service."

The appellant contends that an exception to the requirements for a Maryland real estate broker's license should be recognized under, or rather (we should say) read into, our statutes. He refers us to some out of state authorities which we do not find helpful in construing our own statutes, since we find the meaning of our own statutes to be clear.

Three prior decisions of this Court (not cited or relied upon by the appellant, perhaps because of a realization that

they would not really help his cause) might be thought at first blush to lend some support to the appellant's contention, but we think that they do not do so. Two of them, *Kolb v. Burkhardt*, 148 Md. 539, 129 A. 670, and *Harlan v. Simering*, 163 Md. 609, 163 A. 693, arose under the (former) Public Local Laws of Baltimore City relating to real estate brokers. The particular section there involved was sec. 699 A of the City Charter and Public Local Laws, as added to the 1915 Edition (later designated as sec. 817 of the 1938 Ed.) by Ch. 493 of the Acts of 1918. It contains a definition of the business of a real estate broker which is in part similar to that contained in § 212(e), *supra*, enunciating certain acts the doing of which will cause the actor to be a real estate broker; but there was no provision, such as that of sec. 212(e) making "any single act or transaction" of a specified kind sufficient to constitute the doer thereof a real estate broker. This difference makes these cases inapplicable here. The difference between the statutes is emphasized by the fact that the sections of the Baltimore City Public Local Laws dealing with real estate brokers were repealed and were superseded by Ch. 351 of the Acts of 1939, which first enacted the Real Estate Broker subtitle of Art. 56 of the Code of Public General Laws. What is now § 212(e) is unchanged in any material respect from the wording in which it was enacted in 1939.

The third of the three decisions above referred to is *Weil v. Lambert*, 183 Md. 233, 37 A. 2d 312, which arose after the enactment of the State Real Estate Broker Law. It was there held that one who was acting as manager and caretaker of a single building owned by another, and who looked after the general upkeep and repair of the building and attended to renting offices, stores and apartments therein, as well as collecting rents from tenants thereof, without intending to engage in any other transactions respecting realty or interests therein, was not a real estate broker, so that his lack of a real estate broker's license did not bar his recovery from his employer of commissions for his services. It was the over all nature of his employment in connection with this one building that kept him from falling within the definition of a real estate broker. Here the appellant had no comparable employment; he was a real estate

broker elsewhere and he elected to extend his operations into this State.

We do not agree with the appellant's contention that an isolated transaction does not bring him within the requirement for a Maryland license as a real estate broker. In our opinion, under 212(e) a single transaction of the kind therein described is enough to establish that a person performing, or agreeing to perform, for compensation a function of a real estate broker is such a real estate broker within the meaning of the Real Estate Broker subtitle of Art. 56 of the Code (1957, as amended), unless he is exempted from its application by reason of one of the provisions of § 212(f). None of those exemptions is applicable here; the appellant did not hold a power of attorney pursuant to § 212(f)(7). No reason is shown as to why the appellant did not avail himself of the reciprocity provisions of § 219, which seem very simple. None of our previous decisions has actually applied the bar of § 228 to a suit for compensation by an unlicensed real estate broker, but we think that they point towards its validity, and in terms it is clearly applicable.

Heretofore we have not actually decided that the Real Estate Broker licensing law is a regulation for the protection of the public and not a revenue law. The Public Local Laws of Baltimore City relating to the licensing of real estate brokers, of which the section involved in the *Kolb* and *Harlan* cases above cited was one, was held to be a revenue act. *Coates v. Locust Point Co.,* 102 Md. 291, 297, 62 A. 625; *Walker v. Baldwin & Frick,* 103 Md. 352, 356, 63 A. 362. The Public Local Laws of the City did not, however, contain, as the present State law does: (a) provisions for minimum educational requirements, (b) for investigation and determination by the Real Estate Commission of the trustworthiness of prospective licensees, and (c), in the case of applicants for licenses as real estate brokers, (i) requirements that they should have had at least two years' practical experience as real estate salemen or that they are duly qualified to practice law in this State, (ii) provisions for examination by the Commission to determine their qualifications for and knowledge of the work "to protect the interests of those whom they may represent," and (iii) a require-

ment that every licensed real estate broker shall furnish bond in the amount of $5,000, and every licensed real estate salesman in the amount of $1,000, "for the use and benefit of the public who may suffer or sustain any loss by reason of a violation of this subtitle by such brokers or salesmen." (§ 217.) In addition, the State Law (§ 224) provides, as the local law applicable to the City only did not, for the revocation or suspension of licenses by the Real Estate Commission for any of a considerable number of grounds involving misconduct or negligence. In *Bernstein v. Real Estate Comm.,* 221 Md. 221, 156 A. 2d 657, we upheld the suspension of brokers' licenses for unethical conduct under § 224, and in *Buffington v. Wentz,* 228 Md. 33, 178 A. 2d 417, we sustained the right of customers to recover on a bond given pursuant to § 217(b) for breach of fiduciary duty by a broker.

In *Baliles v. Bryant,* 207 Md. 332, 114 A. 2d 601, we dealt with the case on the basis that the plaintiff real estate salesman would not have been entitled, apart from an estoppel against the defendant broker, to recover a share of commissions if she were not licensed at the time of the transaction giving rise to the commissions, but we found it unnecessary to determine whether she was or was not then duly licensed. We thus assumed *sub silentio,* but did not decide, the validity of what is now § 228 (then § 235 of Art. 56 of the 1951 Code). And in *Glaser v. Shostack,* 213 Md. 383, 388, 131 A. 2d 724, we assumed, but expressly did not decide, that the Real Estate Brokers licensing law was for the protection of the public and that the bar of what is now § 228 would be valid as against both an unlicensed real estate salesman and his principal, even though the latter were himself licensed at the time of the transaction. We think that although neither of these cases decides the matter, each points towards the view that the Real Estate Brokers license law is a regulatory enactment for the protection of the public, that the statute itself makes this clear, and that the *Bernstein* and *Buffington* cases which enforced the statute for the benefit of the public support and tend to strengthen this view. We now hold that the Real Estate Brokers subtitle of Art. 56 of the Code (1957, as amended) is a regulation for the benefit of the public.

It follows, we think, that § 228 is, as it purports to be, a bar to the appellant's action for commissions.[1] *Goldsmith v. Manufacturers' Liability Ins. Co.*, 132 Md. 283, 103 A. 627; *Snodgrass v. Immler*, 232 Md. 416, 194 A. 2d 103. In *Snodgrass* we held that provisions pertaining to the licensing of architects (Code (1957), Art. 43, §§ 515, 516) were of a regulatory nature for the protection of the public and barred a suit by a person not licensed thereunder on a contract calling for compensation for his architectural services. In *Goldsmith,* which involved the licensing of insurance agents, a purpose to protect the public was also held to be present and a suit for commissions by an unlicensed agent was similarly held barred. As was said in *Goldsmith* (132 Md. at 286), quoted in *Snodgrass,* 232 Md. at 421-22):

> "* * * a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, can not be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession."

See also 12 Am. Jur. 2d, *Brokers,* § 178, par. 2.

In closing, we may observe that we think that the trial court was in error in refusing to permit the appellant to make a proffer, since a proffer is the appropriate method by which to preserve for appellate review questions with regard to evidence which is not admitted and the nature of which is not apparent from the question to which an objection may be sustained. *Fowler v. Benton,* 229 Md. 571, 575, 185 A. 2d 344. However, in view of the conceded facts of this case, it seems clear that no proffer could have shown anything to remove the bar of § 228, and the error in its rejection is not prejudicial. For the same

---

1. We need not, and do not decide, whether the result might be different if the statute were a revenue act.

reason the exclusion of two letters offered in evidence, if erroneous, was not prejudicial.

*Judgment affirmed, the appellant to pay the costs.*