THORPE, ᴇᴛ ᴜx. *v.* CARTE ᴛ/ᴀ Carte
Real Estate Co.

[No. 15, September Term, 1968.]

*Decided March 5, 1969.*

524

The cause was argued and reargued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*William C. Miller,* with whom were *Miller & Miller* on the brief, and *James Robert Miller* on reargument for appellants.

*Leonard C. Collins,* with whom was *Robert E. Bullard* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Bernard C. Thorpe, a contractor, and his wife, the appellants (hereinafter collectively called Thorpe), owned a tract of land in Montgomery County which they desired to sell. Holmead, Frey and Associates had furnished Thorpe engineering and surveying services. Mr. Frey of that firm told Thorpe he thought he could find a buyer from a group he knew who "had been in it big" and Thorpe told him to "go ahead." Frey, who was unlicensed as a real estate salesman or broker, brought Eisenstadt, a licensed salesman and an employee of the appellee Ross J. Carte, a licensed broker, who trades as the Ross J. Carte Real Estate Co., to meet Thorpe. As a result, on July 21, 1965, Thorpe gave Carte an exclusive listing agreement which provided for a commission of 6% to Carte. Four days later Thorpe executed a contract to sell his property which was executed also by the purchaser and by Eisenstadt on behalf of Carte. The contract in the part here pertinent provided: "The Sellers recognize Ross J. Carte Real Estate Co.—65% & Holmead, Frey & Assoc.— 35% as the Agent negotiating this Contract and agree to pay 6% commission for services rendered * * *." The sale was not consummated because Thorpe had agreed in the contract that it was to depend on his having certain covenants restricting building on the property removed and he was unsuccessful in his efforts in court to remove them.

Carte sued Thorpe for 65% of 6% of the contract price in

March 1967. Thorpe preliminarily moved to dismiss for want of a necessary party, Holmead, Frey "because this is an action to enforce a joint obligation and [Holmead, Frey] who is not joined as a Plaintiff is a joint obligee as appears from Exhibit A [the contract] filed with the Declaration herein." The court dismissed this motion after Carte had pleaded that Holmead, Frey "was at the time of the execution of the contract the basis of this action a firm of surveyors and that not being licensed real estate salesmen or brokers of the State of Maryland cannot share in any commission as a matter of law," that Holmead, Frey no longer exists as an entity and the individual former partners are prepared to disclaim any interest in the commissions. Thorpe then demurred to the declaration, claiming (1) that Carte had admitted of record that Holmead, Frey were not licensed and that the "said suit is therefore prohibited from being instituted or any recovery had thereon under Sections 227 and 228 of Art. 56 of the Annotated Code of Maryland, 1964 Replacement Volume," and (2) that the provision of the contract for the splitting of commissions between a licensed broker and an unlicensed broker is illegal and unenforceable.

Thereafter Carte took Thorpe's deposition in which Thorpe, speaking of Frey and Eisenstadt, said: "All I know is they worked something out. Frey wanted to get something out of the deal between him and Eisenstadt on the commission. That was their deal." Thorpe propounded interrogatories to Carte, who gave the following pertinent answers:

"10. There was no written agreement with Holmead, Frey & Associates as to payment of a commission. At the meeting between Mr. Thorpe, Mr. Eisenstadt and Mr. Frey there was an oral agreement which was later incorporated in the contract."

"12. Prior to the execution of Exhibit A, we agreed that the defendants [Thorpe] would pay us only 65% of the commission and that they would pay Holmead, Frey & Associates 35%; we never agreed to give any commission to Holmead, Frey nor to pay them any commission.

"13. We orally agreed to accept from the defendant-

owners [Thorpe] a less commission and we orally agreed that the defendant-owners would pay what would ordinarily be the remaining portion of the commission to Holmead, Frey and Associates."

Carte moved for summary judgment because "the pleadings, depositions, exhibits and admissions on file show there is no genuine dispute as to any material fact and the plaintiff is entitled to judgment as a matter of law." Judge Shure agreed that there was no genuine dispute of material fact, found there was nothing of record to indicate that Carte had "agreed to give any amount to Holmead, Frey & Associates or to any other unlicensed salesman or broker," and concluded that "the arrangement with respect to said 35% of the commission * * * was illegal and [Holmead, Frey] could, of course, not recover a commission in a Court of Law. However, this does not preclude [Carte] from receiving his 65%, about which there is no contest, he being the procuring cause of this sale and therefore having complied with Section 17 of Art. 2 of the Annotated Code of Maryland (*Heslop v. Dieudonne*, 209 Md. 201)." Summary judgment was entered for $49,040 in favor of Carte against Thorpe.

The appeal was briefed and argued on both sides solely on the propriety of the entry of summary judgment. We then entered an order for reargument, being of the opinion that the entry of a summary judgment would be proper but uncertain whether it should be in favor of Carte or Thorpe, the arguments to be directed to whether the provisions of Code (1968 Repl. Vol.), Art. 56, Subtitle "Real Estate Brokers," §§ 227 ("Splitting Fees") and 228 ("Unlicensed Person Cannot Recover on Contracts in Violation of Subtitle") and the law of tainted contracts preclude Carte from recovering any commission. The parties filed supplemental briefs directed to this question and argued orally in support of their positions. We are now of the firm view that Carte cannot recover on the illegal contract entered into to split commissions with Holmead, Frey and that a court will not lend its aid to him in his effort to do so.

The licensing and regulation of real estate brokers and salesmen are provided for under the Subtitle "Real Estate Brokers"

by §§ 212 to 232 of Art. 56 of the Code (1968 Repl. Vol.). In *Smirlock v. Potomac*, 235 Md. 195, 202-203, we decided that a broker, licensed in another State but not in Maryland could not recover a commission on an agreement made in this State for the sale of property here. In establishing the basis for the holding, Chief Judge Brune for the Court analyzed the various defining and regulatory sections of the Subtitle "Real Estate Brokers" in Art. 56 of the Code (1957) and pertinent prior decisions, including *Bernstein v. Real Estate Comm.*, 221 Md. 221, *appeal dismissed* 363 U. S. 419, *Buffington v. Wentz*, 228 Md. 33, *Baliles v. Bryant,* 207 Md. 332, and *Glaser v. Shostack*, 213 Md. 383, and held that though none of those cases decided the matter they pointed definitely to "the view that the Real Estate Brokers License law is a regulatory enactment for the protection of the public [as] the statute itself makes clear," and added:

"We now hold that the Real Estate Brokers subtitle of Art. 56 of the Code (1957, as amended) is a regulation for the benefit of the public.

"It follows, we think, that § 228 is, as it purports to be, a bar to the appellant's action for commissions. *Goldsmith v. Manufacturers' Liability Ins. Co.,* 132 Md. 283, 103 A. 627; *Snodgrass v. Immler, 232* Md. 416, 194 A. 2d 103. In *Snodgrass* we held that provisions pertaining to the licensing of architects (Code (1957), Art. 43, §§ 515, 516) were of a regulatory nature for the protection of the public and barred a suit by a person not licensed thereunder on a contract calling for compensation for his architectural services. In *Goldsmith,* which involved the licensing of insurance agents, a purpose to protect the public was also held to be present and a suit for commissions by an unlicensed agent was similarly held barred. As was said in *Goldsmith* (132 Md. at 286), quoted in *Snodgrass,* 232 Md. at 421-22) :

'* * * a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, can not be en-

forced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession.'

See also 12 Am. Jur. 2d, *Brokers,* § 178, par. 2." [235 Md. at 202-203]

Section 227 of Art. 56 in terms makes it unlawful for any real estate broker, or real estate salesman, to pay any compensation, in money or other valuable thing, to any person other than a licensed real estate broker * * * or real estate salesman "for the rendering of any service, or the doing of any of the acts by this subtitle forbidden to be rendered or performed by other than licensees," and § 228 prohibits recovery in any court of this State by any person unlicensed at "the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service," "* * * for any act done or service rendered," the doing of which is prohibited to other than real estate licensees.

We have no doubt that Carte violated §§ 227 and 228. Under the exclusive listing agreement Carte was to receive a commission of 6% of the sales price. He orally agreed that this 6% commission was to be divided between him and Holmead, Frey. He did not physically receive the full commission and then in turn give Holmead, Frey 35% thereof; he orally (and later in writing) agreed that he and Holmead, Frey would be joint obligees under a single contractual provision and that Thorpe, rather than he would do the dividing of the agreed upon commission to which he otherwise would have been entitled in full.

We see the effect of this contract to be the same as if Carte had received the commission and then himself split it. What one does by another he does himself and the intents and purposes of §§ 227 and 228 could not be effectuated if a broker could do by manifestly obvious indirection what he is forbidden to do directly. Compare *Gilbert v. Edwards* (Ct. App. Mo.), 276 S.W. 2d 611.[1] Carte's contract to split his commission with Holmead,

1. In the Gilbert case the non-licensed broker sued the licensed

Frey violated §§ 227 and 228 and was illegal. "Any bargain is illegal if either the formation or the performance thereof is prohibited by constitution or statute." 2 Restatement *Contracts* § 580. Generally a party to an illegal bargain cannot recover either damages for its breach or, after rescission, the performance he has rendered or its value. 2 Restatement *Contracts* § 598. Comment a under § 598 says:

> "[T]he rule of public policy that forbids an action for damages for breach of such an agreement is not based on the impropriety of compelling the defendant to pay the damages. That in itself would generally be a desirable thing. When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief. Courts do not wish to aid a man who founds his cause of action upon his own immoral or illegal act. If from the plaintiff's own statement or otherwise it appears that the bargain forming the basis of the action is opposed to public policy or transgresses statutory prohibitions, the courts ordinarily give him no assistance. The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff."

In *Goldsmith v. Manufacturers' Liability Ins. Co.,* 132 Md. 283, and *Snodgrass v. Immler,* 232 Md. 416, both cited in *Smirlock v. Potomac, supra,* it was held that even though the statute for the benefit of the public there involved did not in terms prohibit recovery on a contract illegal under the statute an un-

---

broker and relied on the fact that a clause in the contract between the seller and the purchaser provided for the division of commissions by the seller. The Court rejected this claim, saying:

"Plaintiff was not a party to this contract, but aside from this, it must not be forgotten that this provision in the contract signed by the buyer and the seller was based on the agreement previously made between plaintiff and defendants to split the commission. We have held that such an agreement is illegal and void and, therefore, that portion of the agreement between the buyer and the seller, relied on by plaintiff, attempting to carry out the void agreement must also fail." [276 S.W.2d at 620-621]

licensed person could not recover under such a contract or for services rendered. In *Glaser v. Shostack,* 213 Md. 383, 388, also relied on in *Smirlock,* we indicated definitively that if the determination were necessary to the decision of the case, we would have held that if a real estate salesman was unlicensed at the critical time his licensed employer-broker could not recover on a contract for commissions made for him by the unlicensed agent, citing *Haas v. Greenwald* (Cal.), 237 P. 38, *aff'd per curiam* 275 U. S. 490; *Firpo v. Murphy* (Dist. Ct. App. Cal.), 236 P. 968; and *Meyers v. Suffin,* 203 N.Y.S. 103, all of which so held.

Where the statute involved is (a) one for the protection of the public against incompetence and dishonesty, as is the Maryland statute, and (b) there is a single contract for the payment of real estate commissions in part to an unlicensed person and in part to a licensed person and the licensed person's suit for part of the commission necessarily reveals the statutorily forbidden participation in the deal of an unlicensed person with the consent of the licensee, almost all courts have held that because the contract is illegal the licensed obligee will not be permitted to recover. *Payne v. Volkman* (Wis.), 198 N. W. 438; *Kemmerer v. Roscher* (Wis.), 100 N.W.2d 314; *Wise v. Radis* (Dist. Ct. App. Cal.), 242 P. 90; *Weber v. Tonini* (Dist. Ct. App. Cal.), 311 P. 2d 132; *Davis v. Jouganatos* (Nev.), 402 P. 2d 985; *Harris v. McKay* (Dist. Ct. App. Fla.), 176 So. 2d 572; *Frieman v. Greaves* (Ct. App. Ohio), 74 N.E.2d 860; *Brandenburger & Marx v. Heimberg* (N. Y. City Mun. Ct.), 34 N.Y.S.2d 935; *Wasson v. Hartt* (Civ. App. Tex.), 244 S.W.2d 258, *writ of error refused.* The cases are collected in an annotation, Real Estate Brokers—License, in 8 A.L.R.3d 523, 531, *et seq.*

Summary judgment should have been entered for Thorpe for costs.

> *Judgment reversed and judgment for costs entered in favor of appellants against the appellee.*