## LUSBY ET AL. *v.* SHANNON & LUCHS COMPANY

[No. 7, September Term, 1971.]

*Decided October 14, 1971.*

*Motion for rehearing filed November 11, 1971; denied November 17, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*James F. Fitzgerald* for appellants.

*Charles J. Steele,* with whom were *Jo V. Morgan, Jr.,* and *Harry L. Ryan, Jr.,* on the brief, for appellee.

**122**

SINGLEY, J., delivered the opinion of the Court.

There came a time when the appellants, Roger W. Lusby, Jr., Joseph G. Anastasi and Joseph F. Anastasi, a co-partnership trading as Trio Associates (Trio), determined to sell the Metropolitan National Bank Building in Silver Spring, Maryland. To that end, Trio authorized Alvin Peck, an employee of Shannon & Luchs Company (Shannon & Luchs), a real estate brokerage firm, to find a purchaser for the building. In due course, Peck found Dr. Jacob Hirsch and Harry Hirsch (the Hirsches), who by contract dated 20 December 1968 agreed to purchase the building for $1,000,000, of which $200,000 was to be paid in cash at time of settlement, on or before 20 January 1969. The balance of the purchase price, also to be paid in cash, was to be derived from a 25 year $7\frac{1}{4}$% loan of $1,855,000, which was referred to somewhat ambivalently in the contract and an addendum thereto.[1]

The contract provided:

"Purchaser is to [sic] (see attached addendum) a FIRST DEED OF TRUST secured on the premises of One Million Eight Hundred Fifty-five Thousand Dollars ($1,855,000.00) bearing interest at the rate of $7\frac{1}{4}$ per cent per annum, payable in 25 years."

The addendum is set forth in full:

"The contract is subject to the placement of a First Mortgage loan secured on the said premises and on the construction of an addition in accordance with the preliminary plans drawn by Eugene Delmar, AIA, dated April 19, 1968, in the face amount of $1,855,000.00 to net $1,750,-000.00 after taking any and all points and/or placement fees.

"Loan shall bear interest of $7\frac{1}{4}$% per annum on any remaining outstanding balance and

---

1. The purchasers intended to expend most of the funds realized by the mortgage loan in excess of the purchase price on the construction of an addition to the building.

shall be payable interest only for two years and then shall be retired in equal monthly payments to include interest and principal over a period of 25 years.

"In addition to the total fees, $800,000.00 is requested to be disbursed on the existing building and land for the proposed addition. $950,-000.00 shall be disbursed during the construction period in accordance with the progress of the new addition.

"No personal responsibility on permanent loan.

> Harry Hirsch
> Jacob H. Hirsch
> JGA [Joseph G. Anastasi]
> RWL [Roger W. Lusby, Jr.]
> JFA" [Joseph F. Anastasi]

Trio itself had originally contemplated the construction of an addition to the building, but because of its lack of liquidity had been unsuccessful in obtaining a loan. Trio had employed James B. Keister as a "general consultant" to arrange financing. When Trio later decided to sell the property, it introduced Keister to the Hirsches as "a loan broker", a man whom they "would have to deal through".

Dr. Hirsch testified that it was the assurance that financing would be available on the terms described in the contract of sale which made the proposed purchase attractive. Three days after the contract was executed, the Hirsches gave Keister written authority to arrange for financing, but on the advice of their attorney, stipulated that they were to assume no personal liability for the loan and that "all other terms of commitment letter shall be satisfactory" to them. Keister testified that the imposition of the latter of these conditions prevented his arranging financing at the $7\frac{1}{4}\%$ rate, and that the most he could hope for was a loan at $7\frac{1}{2}\%$, which was unacceptable to the Hirsches.

When the 30 day period for settlement expired with-

out settlement having been made, Trio, contending that the purchasers had breached the contract, sought a forfeiture of the $50,000 deposit under paragraphs 13 and 14 of the contract, which provided, in part:

"(13) * * * If the purchaser shall fail to make full settlement, the deposit herein provided for may be forfeited at the option of the seller, in which event the purchaser shall be relieved from further liability hereunder, * * *."

"(14) The entire deposit shall be held by Shannon & Luchs Co., Agent, until settlement hereunder is made or until the deposit is forfeited. In the event of the forfeiture of the deposit, the Agent shall retain one-half thereof as a compensation for his services and shall pay to the seller the remaining one-half of the forfeited deposit."

Not until this demand was made did Trio learn that Peck had never deposited the check, and had, in fact, returned it to Dr. Hirsch sometime in late January, but prior to the 20 January settlement date. Trio then sued Shannon & Luchs in contract, claiming damages of $50,000, allegedly occasioned by the return of the deposit. From a judgment for costs in favor of Shannon & Luchs, Trio has appealed.

Trio argues that it was aggrieved by Shannon & Luchs' failure to deposit the $50,000 check, and that the aggravation was compounded by the return of the check. As we see it, however, this argument overlooks the whole point of the case, which was that the purchasers were to be bound by the contract only if they were successful in arranging financing at $7\frac{1}{4}\%$, a result which they were never able to achieve. Until they were bound, there could be no breach, and consequently, no forfeiture.

In entering judgment for Shannon & Luchs, the court below found as a fact that neither Shannon & Luchs nor its salesman, Peck, had agreed to arrange for financing, but that this was the responsibility of the Hirsches, which they failed to meet. On our review of the record,

we cannot say that this finding was clearly erroneous, Maryland Rule 886.

The testimony on cross-examination of Lusby, a member of the Trio partnership, is of some significance in establishing the fact that financing was not the responsibility of Peck or Shannon & Luchs. He was asked:

"So Mr. Keister's ability to deliver the loan set forth in the addendum was a condition of this whole deal; was it not?"

and answered:

"That is true."

Later, in response to the question:

"But weren't you offering this [the property] on the basis that if they [the Hirsches] had adequate financing they could get the loan through Mr. Keister; Mr. Keister was your man?"

Lusby replied:

"Well, I was offering a package: that Mr. Keister would deliver a loan, which [sic] the deal would go through. If Mr. Keister could not deliver the loan there was no deal."

This testimony clearly supports the finding of the lower court that the contract was conditioned on financing. It would seem to us that if, as Keister testified, a $7\frac{1}{4}\%$ loan would be available only to a purchaser with financial responsibility, and that Trio was aware of this, the possibility of obtaining such a loan became minimal when the parties stipulated in the addendum that the purchasers were to have no personal responsibility.

Trio makes much of the fact that by failing to deposit the $50,000 check, by failing to disclose that it had not been deposited, and by returning it to Dr. Hirsch before the time for performance had expired, Peck, as agent for Shannon & Luchs, was guilty of a breach of his fiduciary duty, citing Maryland Code (1957, 1968 Repl. Vol.) Art.

56, § 227A (a) (which requires that deposit monies be "expeditiously" deposited in an escrow account) and *Sellner v. Moore,* 251 Md. 391, 247 A. 2d 523 (1968) (which holds that in certain circumstances misconduct of an agent with respect to deposit monies can constitute a breach of duty and a lack of good faith sufficient to defeat his right to a commission). Then they go one step further, and say that Shannon & Luchs forfeited its right to any commission, because it had agreed to share it with Keister, who was not a licensed real estate broker, in violation of Art. 56, §§ 227 (a) and 228, relying on *Thorpe v. Carte,* 252 Md. 523, 250 A. 2d 618 (1969), which so holds.

The simple answers to these contentions are: first, that Trio brought suit for breach of contract, seeking a recovery of the deposit and not for the breach of a fiduciary duty involving a different measure of damages, which Trio made no effort to prove; and second, that by reason of the purchasers' failure to meet the condition precedent which would have bound them under the contract, Shannon & Luchs never became entitled to a commission and the rules of *Sellner* and *Thorpe,* even if applicable, could not be invoked to work a forfeiture of a commission which was never earned.

Peck explained his conduct by saying that Dr. Hirsch had instructed him not to deposit the $50,000 check until a mortgage commitment was in hand, and that he had returned the check when it became apparent that there was no hope of obtaining the financing on which performance of the contract was conditioned.

It may well be that Peck or Shannon & Luchs failed to observe the requirements of Art. 56, §§ 227 (a), 228 and § 227A (a), but the failure to do so, in this case, in no way prejudiced Trio.

*Judgment affirmed; costs to be paid by appellants.*