Charles E. DAVIS, III; Whitt Sessoms, III, Plaintiffs-Appellants,

v.

THOMAN MOTEL CORPORATION, Recreational Industries, Inc.; William A. Thoman, Jr.; John W. Dever, Defendants-Appellees.

No. 89–3298.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1990.

Decided April 4, 1990.

John Webb Drescher, Karen Rye, on brief, Breit, Drescher & Breit, Norfolk, Va., for plaintiffs-appellants.

Maria Giovanna Krapf, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for defendants-appellees. Neil J. Ruther, Melnicove, Kaufman, Weiner, Smouse & Garbis, Baltimore, Maryland; M. Wayne Ringer, Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and WILKINS, Circuit Judges.

POWELL, Associate Justice:

The question presented is whether the magistrate erred when he granted appellees' motion for summary judgment on appellants' claims for breach of contract and tortious interference with contract. We hold that the magistrate properly granted appellees' motion.

I

Appellants Charles G. Davis, III and Whitt Sessoms, III, and appellees Thoman Motel Corporation and Recreational Industries, Incorporated, signed an Employment Agreement on March 8, 1985, whereby appellants would sell condominium units in appellees' Wisp Condominium Resort and Conference Center ("Wisp Resort") in Deep Creek Lake, Maryland. Appellants were citizens of Virginia and were not licensed real estate brokers or salesmen in the state of Maryland. *See* Joint Appendix ("J.A.") at 5, 82. Appellants were to receive a 6% commission on each sale. *See id.* at 11. Appellees agreed to furnish appellants with an office, secretary, telephone, and customary office furnishings and supplies and to pay all marketing and advertising ex-

penses. *See id.* at 12. If appellants did not sell 107 of the 536 condominium units by September 15, 1985, appellees reserved the right to discharge appellants. *Id.* at 13.

Appellants failed to sell 107 units by September 15, 1985, and appellees discharged them. Appellants filed this suit, alleging that appellees' refusal to fund certain marketing and advertising expenses caused appellants to fail to meet the sales quota. They sought damages in Count I for breach of contract and in Count II for tortious interference with contract.

Appellees filed a motion for summary judgment, and the motion was referred to United States Magistrate Tommy E. Miller pursuant to 28 U.S.C. § 636(c). The magistrate granted the motion, ruling that appellants were acting as real estate brokers without the proper license from the state of Maryland. As such, the magistrate held that section 228 of Article 56 of the Maryland Code [1] barred recovery.

## II

Appellants stipulated that they were not licensed as real estate brokers or salesmen in Maryland at the time they were selling condominium units at Wisp Resort. *See* J.A. at 82. They do not dispute that their activities pursuant to the Employment Agreement fall within the general definition of real estate brokerage requiring licensure. *See* Md.Ann.Code art. 56 § 212(a) (1988).[2] Rather, they argue that they fall within four statutory exceptions to the general definition of "real estate broker" and "real estate salesman."

■ Section 212(f) of Article 56 of the Maryland Code excepts from the general licensing provisions, *inter alia:*

(4) Owners or lessors of property in the management and sale of such property unless their principal and regular business is that of purchasing, selling, exchanging or trading in real estate and options and leases thereon; . . .

(5) Investment home builders with respect to the sale or rental of houses constructed by them; . . .

(7) Any person holding in good faith a duly executed power of attorney from the actual owner authorizing the sale and

---

**1.** At the time of the alleged breach of contract, section 228 provided:

> No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this subtitle to other than licensed real estate brokers and real estate salesmen unless such person, co-partnership, association or corporation was duly licensed hereunder as real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

This provision was repealed on October 1, 1988. Section 16–516 of the Maryland Business Occupations and Professions Code now provides:

> A person may not bring an action or recover on an action for compensation for providing real estate brokerage services in a court of the State unless the person was authorized to provide real estate brokerage services under this title at the time of offering to provide and providing real estate brokerage services.

**2.** At the time of the alleged breach of contract, section 212(a) defined a real estate broker as:

> [A]ny person, association, copartnership or corporation foreign or domestic, who for another and for a fee, commission or any other valuable consideration sells, purchases, exchanges, leases, rents or collects rent for the use of real estate or who attempts or who offers by verbal solicitation, advertisement or otherwise to perform any such function, or who aids, attempts or offers to aid, for a fee, any person in locating or obtaining for purchase or lease any residential real estate, or who is regularly engaged in the business of dealing and trading in real estate or leases and options thereon, or who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both, or who is engaged in the business of subdividing and selling land in building lots or sites, whether such real estate is located in this or any other state or the District of Columbia.

This provision was repealed on October 1, 1988. The new definition of real estate brokerage services is codified in Md. Bus. Occ.Code Ann. § 16–101(k) (1989).

conveyance or leasing of any real estate, where only one such transaction is involved; ... [and]

(9) Designated agents of owners or licensed real estate brokers in the management of such property unless the designated agent's principal and regular business is that of purchasing, selling, exchanging, or trading in real estate and real estate options....

Maryland's real estate licensing provisions were enacted for the benefit of the public. *See Smirlock v. Potomac Development Corp.*, 235 Md. 195, 200 A.2d 922 (1964). The statute clearly expresses the view of the Maryland legislature that the public will best be protected in most situations if those engaged in real estate brokerage in Maryland are licensed and regulated by the state. We agree with the view of the Maryland Attorney General that exceptions to the licensing requirements should be narrowly construed. *See* 58 Op.Att'y Gen. 597 (1972).

A motion for summary judgment must be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing the motion for summary judgment cannot rest upon "mere allegations or denials," but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In this case, appellants admit that their activities fell within the general definition of activities requiring a license. When appellees moved for summary judgment, the burden was on appellants to "set forth specific facts," by affidavits or otherwise, to establish a genuine issue of material fact as to whether appellants qualified for any of the exceptions in section 212(f). *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553. Appellants set forth no specific

facts to indicate that they fell within any of the exceptions. Appellees therefore were entitled to judgment as a matter of law, and the magistrate properly granted their motion for summary judgment. We review the absence of evidence on each of the exceptions in turn.

### A

■ Appellants did not set forth specific facts to indicate that they would qualify for Exception 4. First, they did not present specific facts that they were "[o]wners or lessors of property in the management and sale of such property." In fact, appellants admit that they were not the owners or lessors of the Wisp Resort. Rather, appellants argue that they were acting as agents of a corporation that they contend would fall within Exception 4. Because this corporation can only act through its agents, appellants reason that an exception for the corporation must also except all of the corporation's agents. This argument ignores the fact that Exception 4 does not mention "agents" of owners or lessors. It refers only to the owners or lessors themselves. The Maryland legislature knew how to include "agents" within the statutory exceptions. It did so in Exception 9, which refers to "[d]esignated agents of owners." Exception 4 refers only to "[o]wners or lessors of property in the management and sale of such property." If an owner—whether an individual, corporation, or other entity—hires someone else to sell its property, Exception 4 does not apply.

Second, even if we were to accept appellants' agency theory, appellants failed to create a genuine issue of material fact as to whether appellee Thoman Motel Corporation would have been excused from licensure under Exception 4. Owners or lessors of property may be excepted under that provision "unless their principal and regular business is that of purchasing, selling, exchanging or trading in real estate and options and leases thereon." Appellants presented no evidence to indicate that the principal and regular business of Thoman Motel Corporation was not "purchasing,

selling, exchanging or trading in real estate and options and leases thereon."

### B

■ Appellants cannot rely on Exception 5 for similar reasons. That provision refers to "[i]nvestment home builders with respect to the sale or rental of houses constructed by them." Appellants did not construct the Wisp Resort condominiums they were selling. Exception 5 does not refer to "agents" of investment home builders. Thus, Exception 5 does not apply to appellants. Furthermore, if Exception 5 were interpreted to include agents of investment home builders, this exception would swallow most of the rule of licensure. Under such an interpretation, almost any real estate broker hired by a developer to sell a new house or condominium built by that developer would fall within Exception 5, even if that broker's "principal and regular business" involved purchasing, selling, exchanging or trading in real estate and options and leases thereon. The Maryland legislature did not intend to leave unregulated such a significant portion of real estate sales in the state. *See* 58 Op.Att'y Gen. 597 (1972). Such a result would be inconsistent with both the general purposes of the real estate licensing provisions and the specific language of Exception 5, which does not refer to "agents."

In addition, even if Exception 5 covered agents of corporations, appellants produced "no evidence to show that this particular condominium project and its owners could properly be classified as 'investment home builders.'" J.A. at 114 (opinion of Magistrate Miller). The burden was on appellants to create a genuine issue of material fact. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553. They failed to meet this burden.

### C

Exception 7 is the most clearly inapplicable of the exceptions appellants embrace. Leaving aside the question of whether the March 8, 1985, Employment Agreement was a "duly executed power of attorney," Exception 7 applies "where only one such transaction is involved." Unless it anticipates a single bulk sale, a contract to sell over 500 condominium units does not involve only one transaction. The Employment Agreement anticipated numerous sales of single units. *See* J.A. at 80 (requiring the sale of 107 out of 536 units by September 15, 1985). Exception 7 does not excuse appellants from the licensing requirements.

### D

■ Exception 9 specifically refers to "[d]esignated agents" of owners. But appellants fall within Exception 9 only if their "principal and regular business" is not purchasing, selling, exchanging, or trading in real estate and real estate options. Appellants stipulated that during the period when they were selling Wisp Resort condominium units, "substantially all" of their income was "derived from the earning of commissions on the sales of real estate." *Id.* at 82. As appellants have noted, it is theoretically possible for individuals to earn substantially all of their income from real estate commissions but have other income-producing activities constitute their "principal and regular business." A theoretical possibility, however, does not satisfy the burden faced by a party opposing a summary judgment motion. Appellants set forth no evidence to indicate that real estate brokerage was not their principal and regular business at the time in question. The magistrate properly granted appellees' summary judgment motion.

### III

■ Appellants contend that summary judgment was inappropriate because, pursuant to *Caddell v. Singer*, 652 F.2d 393 (4th Cir.1981), appellants' entitlement to commissions should be governed by laws relating to employer-employee relationships, rather than laws regulating real estate brokers. *Caddell*, however, was decided on a motion to dismiss. A number of factual questions needed to be addressed before the district court could determine whether the real estate licensing provisions

precluded recovery of commissions. *Id.* at 394–95. This case, however, was decided on a motion for summary judgment. Unlike the plaintiff in *Caddell,* appellants could not rely merely on allegations that their services were those of management rather than those of an independent broker. Appellants admit that their services fell within the broad definition of services requiring a license. They failed to meet their burden of creating a genuine issue of material fact. They presented no evidence to indicate that the nature of their services was such that the real estate licensing provisions should not apply.

### IV

The magistrate also properly granted summary judgment on appellants' claims in *quantum meruit* and for tortious interference with contract. The complaint simply does not assert a claim in *quantum meruit.* Count I sets forth a cause of action for breach of contract. Count II sets forth a claim for tortious interference with contract. We agree with the magistrate that Count III "is not a separate theory of recovery but instead merely asserts that the court should not dismiss the Complaint as the damages flowing from the defendants' actions are readily ascertainable." J.A. at 117.

The magistrate granted summary judgment on Count II because "tortious interference can occur only with respect to a contract which is capable of being breached." *Id.* If a contract is "invalid," no claim for tortious interference can be brought. A "voidable" contract, however, can provide the basis for a claim for tortious interference. *See* R.P. Gilbert, P. Gilbert & R.J. Gilbert, *Maryland Tort Law Handbook* § 7.3 (1986). We interpret Md. Ann.Code art. 56 § 228 as rendering the March 8, 1985, Employment Agreement void as against public policy because appellants agreed to provide real estate brokerage services without a license. As such, the contract is "invalid" and cannot provide the basis for a tortious interference claim. *See* W.P. Keeton, D. Dobbs, R.E. Keeton &

D. Owen, *Prosser and Keeton on Torts,* § 129 at 994 (5th ed. 1984).

### V

The magistrate properly granted appellees' motion for summary judgment. The judgment for appellees is

AFFIRMED