JAMES M. LESTER, and Wife *vs.* THE HOWARD BANK. ORVILLE HORWITZ, Assignee *vs.* THE HOWARD BANK, and others.

*Loan by a Bank in violation of its Charter—Enforcement of a Contract prohibited by Statute.*

A provision in the charter of a bank, prohibiting any director or other officer, under penalty of fine or imprisonment, from borrowing money from the bank, does not exempt a director from liability for money loaned to him in violation of the prohibition.

Contracts made in violation of a statute, are not necessarily incapable of enforcement because of their illegality. Whether the Courts will enforce them or not, is a question of public policy, and they will be enforced when it may be adjudged that such policy requires their enforcement.

APPEALS from the Circuit Court of Baltimore City.

The facts of the case sufficiently appear in the opinion of the Court.

The appeal was taken from an order of the Circuit Court overruling exceptions to the auditor's account, and ratifying the same.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Orville Horwitz* and *Benj. C. Barroll*, for the appellants.

The loan having been made to Purvis while a director and the president of the bank, was in clear violation of law, and of the charter of the bank, and cannot be enforced; it is not a legal, valid claim or contract; *it is, as a contract, null and void.*

When a bank makes a loan in violation of its charter, it is null and void—it cannot be enforced by either party. *Albert vs. Mayor and City Council,* 2 *Md.*, 159; *Merrick vs. The Trustees of the Bank of the Metropolis,* 8 *Gill,* 64; *Bayne vs. Suit,* 1 *Md.*, 85; *Hall vs. Mullin,* 5 *H. & J.*, 190.

The illegality of this contract arises out of the 10th section of the charter, in these words: "No director or other officer of said corporation shall borrow any moneys from said corporation; and if any director or other officer shall be convicted upon indictment of directly or indirectly violating this section, he shall be punished," &c. It is admitted, in the answer of the bank, that the loan was to Purvis, and that he was an officer of the bank. That the charter was violated, is not, therefore, in dispute.

Does this illegality in the contract, avoid it and make it incapable of enforcement in a Court of Equity?

The bank's counsel contend that it is not mandatory, but directory. The clause in the charter is *prohibitory;* the bank cannot *legally* loan its funds to its officers in direct violation of its charter. The bank cannot recover upon a contract so tainted with illegality. A State Court cannot so stultify itself as to enforce a contract which the State has forbidden to be made—"*ex turpi contractu non oritur actio.*" The relation of debtor and creditor never arises under a loan made in direct violation of law. It was not only in violation of the charter, but against the known and declared *public policy of the State. Const.* 1851, *Art.* 3, *sec.* 45.

On behalf of the claim of Mrs. Lester: Mrs. Lester is not a complainant in the cause—she is brought into it by the process of the Court—and in her answer takes strong ground

against the pretensions of the complainant. She is a co-defendant with the bank—resisting the claims of Purvis and the illegal claim of the bank. She did not seek the aid of the Court; and the Court is now called on to adjudicate her rights with the bank, they being co-defendants, claiming a fund in Court.

Although there is conflicting evidence, the Court will find that the bank had notice of her interest in the property as half owner before the loan was made to Purvis.

Purvis was *president* of the bank, and swears that the bank had such knowledge.

The bank, who made the loan, and the president of the bank, by whom the money was borrowed, are in *pari delicto*, and this is so, notwithstanding the penalty is imposed on the borrower alone. *Cannan vs. Bryce*, 3 *B. & Ald.*, 179; *M'Kinnell vs. Robinson*, 3 *Mees. & Wells.*, 441; *Pearce vs. Brooks, Law Rep.*, 1 *Exch.*, 217; *Joy vs. Campbell*, 1 *Sch. & Lef.*, 339; *Evans vs. Richardson*, 3 *Merrivale*, 470.

Where a statute is passed or a charter granted, containing prohibitions *founded on public policy*, contracts in violation of those prohibitions, are void, and both parties to said contracts are in *pari delicto*. *Leavitt vs. Palmer*, 3 *Comstock*, 19.

If the above proposition were modified at all, it would be in favor of the complainant, who represents, not only Purvis, the president of the bank, but creditors also—parties entirely innocent of the transaction in question, and who are favored in a Court of Equity.

The trustee, under a deed for the benefit of creditors, holds a double relation. He is clothed with the title of the grantor, so as to enable him to enforce all his rights, at the same time that he represents the interests of the creditors, whose rights he is bound to protect and enforce.

The note executed by Purvis to the bank, and the loan by the bank to Purvis, were void transactions, as against the public policy of the State, and the express provisions of the charter of the bank, and in the distribution of the funds of

the insolvent, the innocent creditors will be preferred to those whose debts arise *ex turpi causa.*

*Edward Duffy* and *Henry Stockbridge*, for the appellees.

·Although a statute prohibits an act or contract and imposes a penalty therefor, yet it does not follow that the act or contract is void—that depends upon the construction to be placed upon the whole statute. *Harris vs. Runnels,* 12 *Howard,* 84, 85, 86; *Shoemaker vs. Nat. Mech. Bank,* 31 *Md.,* 401.

The prohibition, or limitation of power in this section is not directed against the bank, but against the officers. There is nothing then from which an inference can be drawn that the loan was void.

The manifest object of the prohibition against the officers was to protect the stockholders. Now the doctrine of the appellants is that if the directors borrowed all the capital of the bank, the act being *malum prohibitum* and void, the bank (that is the stockholders) could not recover its capital, and the very provision passed to protect their money robbed them of it.

Conceding that the bank and the director were both in fault, yet first, the law was intended to protect the former from fraud or aggression of the latter, and secondly, the director is the more guilty of the two, the prohibition and the penalty being directed against him, and the parties therefore are not *in pari delicto.* Now where a party to· a forbidden contract not *malum in se* is in either of these positions he is entitled to recover. *Tracy vs. Talmadge,* 14 *N. Y.,* 179 to 191, recognized in *Maryland Hospital vs. Foreman,* 29 *Md.,* 531; *Bates vs. Bank of the State of Alabama,* 2 *Ala.,* 462, 463, 464, 1 *Story's Eq.,* sec. 300; *Curtis vs. Leavitt,* 15 *N. Y.,* 1; *White vs. Franklin Bank,* 22 *Pick.,* 186, 187, 188; *Shoemaker vs. Nat. Mech. Bank,* 31 *Md.,* 402, 403.

But suppose the parties were in *pari delicto,* the Bank is defendant and *potior est conditio defendentis.* 1 *Story's Eq.,* section 298.

And Lester and wife occupy the position of complainants as well as Horwitz. *Carter vs. Denison,* 7 *Gill,* 158, 159.

Even if the bank alone were the guilty party, yet their claim must be allowed because the complainant seeking relief in equity must do equity. 1 *Story's Eq.,* sec. 64 *e,* 301.

These points apply as well against the complainant as assignee for creditors, as against Purvis himself, because the assignee and the creditors stand in Purvis' place. *Curtis vs. Leavitt,* 15 *N. Y.,* 44, 45–51; *Shoemaker vs. Nat. Mech. Bank,* 31 *Md.,* 403. And they apply against Mrs. Lester, because she also claimed under Purvis, and because Purvis acted under her authority.

The complainant is estopped from alleging that the contract for the loan is illegal, because he affirms the contract by his bill. *Story's Eq. Plead.,* secs. 23–27, 28, 37 *a;* *State vs. Bank of Maryland,* 6 *G. & J.,* 216, 231.

ROBINSON, J., delivered the opinion of the Court.

The rule of law is well settled that no action will lie to enforce a contract *malum in se,* nor if executed, to recover money paid under it. In all such cases, the maxims "*ex turpi causa non oritur actio*" and "*in pari delicto potior est conditio defendentis et possidentis*" apply.

In regard to contracts not *immoral,* or *criminal* in themselves, but prohibited by statutory law, the same general rule may be said to apply, not however universal in its application, but subject to certain exceptions as binding in authority as the rule itself. Public policy, it must be borne in mind, lies at the basis of the law in regard to illegal contracts, and the rule is adopted not for the benefit of parties but of the public. It is evident, therefore, that cases may arise even under contracts of this character, in which the public interests will be better promoted by granting than by denying relief, and in such the general rule must yield to this policy. Hence Judge STORY admits that even between parties "*in pari delicto*" relief will sometimes be granted if public policy demands it. 1 *Story's Equity Jur.,* secs. 298–300.

Other cases are to be found arising under contracts made in violation of a statute, in the application to which of the general rule, Courts have been governed by the plain and obvious purposes of the law; and in such it has been repeatedly held that an action would lie against a party receiving money under such a contract upon a promise implied by law to refund it.

Thus in *Smith vs. Bromley, Doug.*, 697, *note*, Lord MANSFIELD said: " If the act is in itself immoral, or a violation of the general laws of public policy, there the party paying shall not have this action. * * * But there are other laws which are calculated for the protection of the subject against oppression, extortion, deceit, &c. If such laws are violated, and the defendant takes advantage of the plaintiff's condition or situation, there the plaintiff shall recover."

This was followed by *Jacques vs. Golighty, 2 W. Black.*, 1073, where an action was brought to recover money paid to the defendant as a premium for issuing lottery tickets, in contravention of the Statute 14 Geo. III, ch. 76, and in which it was insisted that the plaintiff being *particeps criminis* was not entitled to recover, but BLACKSTONE, J., overruled the objection, and gave judgment for the plaintiff. The same principle was affirmed in *Browning vs. Morris, 2 Cowp.*, 790, in which Lord MANSFIELD says, " It is very material that the statute itself, by the distinction it makes, has *marked* the *criminal*, for the penalties are all on *one* side; upon the office keeper." And in *Williams vs. Hedley, 8 East*, 378, where an action was brought to recover money which had been paid by the plaintiff to the defendant to compromise a *qui tam* action brought by the defendant against the plaintiff, contrary to the provisions of a certain statute, it was held that the principle in *pari delicto* did not apply, because it was the purpose of the statute to punish the party who sues in order to extort money, and not the person who might be the victim of such extortion. This appears, said Lord ELLENBOROUGH, " to have been the *true-sense and intention* of the Legislature."

Whether the action was maintained in these cases upon the ground that the principle of "*pari delicto*" did not apply, because the contracts were prohibited by statutes passed for the purpose of preventing one set of men from taking advantage of the necessities of others, or upon the broader ground taken in some of the American cases, that the statutes designated the criminal by prescribing punishment against one party to the contract only, is, in our view, and for the purposes for which they are referred to, quite immaterial. They prove conclusively that one common consequence does not attach to every contract made in violation of positive law, and further than this, that in determining the question as to whether the maxim of *pari delicto* will operate as a bar to relief, Courts will look to the statute itself—the object and purposes for which it was passed, in order to ascertain, in the language of Lord ELLENBOROUGH, "the true sense and intention of the Legislature."

And accordingly in *Harris vs. Runnels*, 12 *Howard*, 80, the Supreme Court, whilst acknowledging as a general rule, that contracts made in contravention of statutory law are void, admit that the rule is subject to many exceptions, made upon distinctions very difficult to be understood consistently with the rule, "so much so," say the Court, "that we have concluded before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty only for doing a thing which it forbids, that the statute must be examined as a whole to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not so to be. In other words whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken as granted that the Legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a Court of justice. In this way the principle of the rule is admitted without at all lessening its force, though its absolute and unconditional

application to every case is denied." The Court further add, "That when the statute is silent and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void."

Under the rule thus laid down, which we regard as just and reasonable, the rights and remedies of parties growing out of prohibited contracts are to be determined by the construction of the statute itself according to the well established rules of interpretation, and if it shall appear that it was not the intention of the Legislature to declare the contract void, although made against the prohibition this *intention* will be gratified, even if it should contravene some general rule of law.

With this rule to guide us, let us look at the facts in this case. The Howard bank, it appears, on the 4th day of October, 1864, agreed to sell to James F. Purvis, its then President and one of its directors, certain property situate in the city of Baltimore, for the sum of twenty-eight thousand dollars, and on the 12th day of July, 1866, Purvis borrowed of the bank the sum of twenty-five thousand dollars, the said sum to be expended in building houses and otherwise improving the property. On the day of the loan, Purvis executed a paper by which he agreed to make the payment of said sum a lien on the property, and further, that he would not demand a conveyance of the *legal title*, until the twenty-five thousand dollars in addition to the twenty-eight thousand dollars due as purchase money, were fully paid.

Afterwards Purvis made an assignment of all his property, for the benefit of his creditors, to Orville Horwitz, Esq., who on the first day of July, 1867, filed a bill against the bank holding the legal title, setting forth the above agreements, and praying for a sale of the property in question. Without waiving any of their rights, an agreement was entered into by all the parties that the property should be sold and the fund take its place, and the proceeds of sale being in a Court of Equity for distribution, an account is stated, in which the

auditor, after allowing the bank its original claim of twenty-eight thousand dollars on account of unpaid purchase money, applies the balance to the payment, first of the loan of twenty-five thousand dollars, and the surplus to Mrs. Lester.

To this account the assignee of Purvis, and Lester and wife have excepted, on the ground that the loan to Purvis and the agreement made to secure the payment of the same were *illegal* and *void*, Purvis being at the time an officer and director of the bank, and the following prohibition in its charter is relied on in support of this exception : "That this Act is passed on the condition * * * that no director or other officer of said corporation shall borrow any money from said corporation, and if any director, &c., shall be convicted, &c., of directly or indirectly violating this section, he shall be punished by fine and imprisonment." The construction thus contended for amounts to this, the directors and officers may combine, and in violation of the express provisions of the charter and in utter disregard of the duties of their trust, loan to each other the entire assets of the bank, and then in a suit brought against them by their successors in office, representing innocent stockholders and creditors, set up this betrayal of their trust and violation of law as a defence to the action. Not that the section relied on so declares in express terms, or that it ever entered the minds of the Legislature that such a construction could be put upon it, but because of some general rule of law which says that illegal contracts cannot be enforced.

Now if the section in question, had further provided that nothing therein contained should exempt a director or officer from liability on account of such loan, we take it for granted, that no one would question the power of a Court to enforce it. So on the other hand, if we are satisfied that such was the intention of the Legislature, upon a fair construction of the section according to the well settled rules of interpretation, it must be gratified and have the same operation and effect, as if it had been declared in express terms. What then was the

purpose of the law when it declared that no director or officer should borrow of the bank? and "if any director," &c., "shall be convicted," &c., "of directly or indirectly violating this section he shall be punished by fine and imprisonment." We say to protect the stockholders, depositors and creditors of the bank, against the temptation to which the directors and officers might be exposed, and the power which as such they must necessarily possess in the control and management of the bank, and the Legislature unwilling to rely upon the implied understanding that in assuming this relation they would not acquire any interest hostile or adverse to the most exact and faithful discharge of duty, declared in express terms that they should not borrow, &c., of the bank. If, however, the views of the appellants be correct, this section instead of being a security to the stockholders and creditors, becomes the instrument of their ruin, and instead of operating as a restraint upon the directors, it exposes them to the greatest of temptations, by relieving them from all responsibility, save the uncertainty of a criminal prosecution. To this construction of a statute, the object and purposes of which to our minds are plain, and which by its very terms *marks the criminal,* we cannot assent. We are of opinion, therefore, that the bank acquired a lien upon this property by the agreement of the 12th of July, and that this lien attaches upon the proceeds of sale in the hands of the assignee.

The principles which underlie our decision in this case, are not in conflict with cases heretofore decided by this Court and relied on by the appellants. In many of them, it is true, the general rule of law denying relief under illegal contracts is stated very broadly, but it will be found upon an examination, that the construction of the several statutes under consideration, did not justify the Court in exempting contracts under them, from the operation of the general rule.

In *Albert and Wife vs. Savings Bank, et al.,* 2 Md., 160, it was said, that a loan to a director could not be recovered,

but the suit was brought to recover certain stock belonging
to a *cestui que trust*, which the trustee had pledged to secure
a loan made to a firm of which he was a member. The Court
held that the loan being in violation of the charter of the
bank, if any injury accrued to a third party from its acts, it
ought to be held liable. What the trustee did, say the Court,
" was a wrong on the rights of the appellants, and if the bank
in contempt of the limitation imposed upon it by its charter,
aided him in the perpetration of the fraud, there is no reason
either of public policy or in law which should exempt it from
responsibility for the injury occasioned by its co-operation."
But in this case, the Court admit that the trustee who had
borrowed the money, might be estopped from denying the
legality of the transaction. It cannot be said, therefore,
that the precise question now before us, was decided in that
case.

The exceptions on the part of Lester and wife, stand on no
better footing. It is true, she agreed to purchase of Purvis
one-half interest in the property, for the sum of fourteen
thousand dollars, and that this agreement was prior to the
loan, but no part of the purchase money was paid by her,
and although there is some conflict in the testimony, we
think it entirely fails to prove notice on the part of the
bank of this alleged sale. Moreover by the agreement of
the 13th of April, 1866, Lester and wife acknowledge that
Purvis had expended large sums of money in improving the
property, by the erection of houses thereon and otherwise,
and expressly empower him " to *sell and* dispose of *the pro-
perty* so improved" in order to re-imburse himself, &c. The
loan to Purvis was subsequent to this agreement, and the
money thereby obtained we are satisfied was expended by
him in pursuance and according to the terms of said agree-
ment. We see no reason, therefore, why the proceeds of
sale, after the payment of the twenty-eight thousand dollars
unpaid purchase money, should not be applied to the pay-

ment of the loan of twenty-five thousand dollars, to secure which, the property was specifically pledged by Purvis.

For these reasons we think the order below ought to be affirmed.

*Order affirmed.*

(Decided 31st January, 1871.)

Alvey, J., dissented.