## DOWNING DEVELOPMENT CORPORATION
### *v.* BRAZELTON, ET AL.

[No. 207, September Term, 1968.]

*Decided May 6, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*John Hanson Briscoe* and *James A. Kenney, III*, with whom
were *Neal P. Myerberg* and *Briscoe & Kenney* on the brief, for
appellant.

*Oliver R. Guyther* for appellees Wicomico Realty Develop-
ment Corporation, B. Guerry Moore and Robert R. Rodenberg.

*William D. E. Sterling* for appellees Terrill Brazelton and
Aviation Yacht and Country Club, Inc.

FINAN, J., delivered the opinion of the Court.

This case involves a declaration of the rights of parties un-
der a contract of sale of 700 acres of valuable real estate in St.
Mary's County owned by the Aviation Yacht and Country Club,
Inc., a non-stock Maryland corporation.

On February 14, 1968, Downing Development Corporation
(appellant) filed a petition in the Circuit Court for St. Mary's
County seeking a declaratory judgment against Terrell Brazel-
ton, (president of the Aviation Yacht and Country Club, Inc.),
Aviation Yacht and Country Club, Inc., Wicomico Realty De-
velopment Corporation and B. Guerry Moore and Robert R.
Rodenberg, agents for R.R.R. & G., Inc. (all appellees). The
appellant prayed that a declaratory judgment be rendered, ad-
judicating the respective rights and duties of the parties under
four separate contracts of sale which the Aviation Yacht and
Country Club, Inc. (Club) had allegedly executed for the sale
of all, or substantially all, of its corporate assets, and a further
declaration that appellant's contract represented the only valid
agreement of the four contracts in question.

It appears that on January 17, 1968, the Club entered into a
so-called formal contract with the appellant under which terms

the Club purported to sell to appellant all, or substantially all, of its assets, consisting of 700 acres of land suitable for real estate development, at and for the price of $2,140,000, payable by appellant as follows: $5,000.00 deposit at the time of execution of the contract; $100,000 in cash at the time of the conveyance of the property, of which the deposit was to be a part, and the balance of $2,040,000 as follows: (1) $800,000 secured by a first deed of trust due in three years at 7% (seven per cent) per annum, payable quarterly; (2) $740,000 represented by a note or notes secured by a deed of trust covering the property, due in ten years and bearing interest at 2% (two per cent) per annum, payable quarterly; and (3) $500,000 represented by a non-interest bearing unsecured note payable in ten years. The contract was signed by representatives of both parties on January 17, 1968.

Section 8 of the purported contract provided, in pertinent part, that such contract "is made upon Buyer securing satisfactory financing of the purchase price." It further provided that "No later than January 23, 1968, (unless such time is extended by the Seller) the Buyer must give written notice to the seller that such condition has been satisfied and scheduled settlement for a date no later than thirty days following the date of notification. If such notice is not given within the time herein provided, this contract shall be null and void and the deposit given hereunder shall be refunded to the Buyer."

The Club refused to honor the contract and advanced the following reasons for refusal to perform:

1. That the owners and management of the Club failed to follow the statutory requirements set forth in section 66 and 70 of Article 23, Code (1967 Repl. Vol.).
2. That appellant failed to comply with and perform certain terms and conditions specified in the contract with particular reference to its method of financing; and that appellant's attempt to comply with such conditions amounted to a counteroffer which was not agreeable to the Club or ever accepted by it.

On March 5, 1968, the hearing began in the Circuit Court for St. Mary's County and the following day at the close of the

appellant's case, appellees made a motion to dismiss. On June 13, 1968, the court filed a written opinion accompanied by a decree determining the validity of the various contracts and granting the appellees' motion to dismiss.

The lower court in its opinon held that the appellant's contract with the Club, dated January 17, 1968, was invalid *ab initio* and consequently it was unnecessary to delve into the additional areas of contention concerning whether appellant did or did not comply with and perform certain terms and conditions specified in the contract. The lower court further determined that the contract between the Club and R.R.R. & G., Inc. was a valid and subsisting contract binding between the parties. The appellant appeals from the lower court's declaration of the invalidity of its contract and the validity of the contract with R.R.R. & G., Inc.

We are presented with the following issues: (1) Was the appellant's contract of January 17, 1968, invalid *ab initio* for failing to comply with section 66 of Article 23, Code (1967 Repl. Vol.); and (2) Was the trial court in error in finding the contract with R.R.R. & G., Inc. to be a valid agreement based on the evidence in the record?

Before discussing the merits of the issues we should like to dispense with a preliminary matter raised by the appellant, that the lower court erred in dismissing the appellant's petition for declaratory relief without rendering a declaration of the rights of the parties. The appellant contends that such a dismissal should be equated with the sustaining of a demurrer and that this Court has repeatedly held that "* * * a demurrer should be used in declaratory actions only to challenge the legal availability of the appropriateness of the remedy." *Hunt v. Montgomery County,* 248 Md. 403, 409, 237 A. 2d 35 (1968); *Kacur v. Employers Mutual Casualty Company,* 253 Md. 500, A. 2d (1969). However, we do not think this argument is valid in this case because, although the lower court concluded its written opinion by stating that "* * * the motion of the defendant to dismiss is hereby granted.", the written opinion delineated in some detail the rights of the parties under the contracts and the reasons for the holding of the court.

In addition, of even date with the filing of the written opin-

ion, a decree was entered by the court which is actually declaratory in nature. Accordingly, what the appellant is arguing about for all practical purposes constitutes a matter of form, rather than substance, and we find no merit in this contention.

I

The record reveals, and the lower court so found, that there was no controversy over the fact that the sale embraced substantially all of the assets of the Club which is a Maryland corporation; therefore, it at once becomes manifest that the provisions of Article 23, section 66 of the Code were applicable. Subsection 66(a) provides that "* * * every such sale, * * * of all or substantially all the property and assets of a corporation of this State shall be effected in accordance with the provisions of this section, * * *." Subsection (b) requires the adoption of the resolution of the board of directors, (1) declaring that the sale is advisable "upon the terms and conditions set forth in a proposed form of * * * articles of sale, * * *" and (2) directing that the proposed articles be submitted for the action of the stockholders, Subsection (c) deals with notice to the stockholders of the meeting and Subsection (d) states that "The proposed articles shall be approved by the stockholders by the affirmative vote of two thirds of all votes entitled to be cast thereon * * *."

Section 70 sets forth in detail the procedures to be followed to accomplish the requirements set forth in section 66.

While the above mentioned procedures are set forth in Part I "STOCK CORPORATIONS" of Article 23, it must be noted that Part II "NONSTOCK CORPORATIONS" of Article 23, provides in subsection 132(a) that, "Except as otherwise provided * * *, every corporation of this state without capital stock shall comply with all provisions of Part I, Stock Corporations, * * *.", and subsection 132(b) provides, "Wherever the term stockholders, * * * [is] used in this article, they shall be deemed to include members, * * *."

The testimony of appellee Brazelton revealed that that Club had 250 charter members, 38 life members and 100 golf associate members, the latter group being the only class without voting privileges. In *Prince George's Club v. Carr*, 235 Md. 591,

202 A. 2d 354 (1964) Judge Hammond, now Chief Judge, writing for the Court stated: "* * * The statutory requirements must be met if there is to be an effective sale of all or substantially all the assets of a Maryland stock corporation. *Brune, Maryland Corporation Law and Practice* (Rev. Ed.), Sec. 316." *Id.* at 596. *Prince George's Club,* involved the validity of a contract covering the sale of 98% of the assets of a country club whose members were also stockholders and although the direct question at issue was a claim for a brokerage commission on the contract to sell the assets of the corporation, we think that the case is apposite to the one at bar. This is especially true when we consider that under subsection 132(a) of Article 23, a "member" of a non-stock corporation is to be considered the same as a stockholder insofar as the requirements of sections 66 and 70 of Article 23 are concerned.

In the case of *In Re May Oil Burner Corporation,* 38 Fed. Supp. 516, (D. Md. 1941), the court dismissed proceedings brought by the corporation to obtain court approval of an arrangement with creditors under the Bankruptcy Act for want of consent of two-thirds of the stockholders, although the "so-called arrangements" had been accepted by 63% of the stockholders, the court stating:

> "* * * Under Maryland law, a sale and transfer of all of the assets of a corporation can only be made when two-thirds of the holders of the outstanding stock of the corporation consent thereto, unless the corporation's charter permits such action by less than a two-thirds vote, which the present Debtor's charter does not do. Dissenting stockholders have the right to demand and receive the fair value of their stock as fixed by an appraisal." *Id.* at 519-520.

See also *Warren v. Fitzgerald,* 189 Md. 476, 489, 56 A. 2d 827 (1948); *Geddes v. Anaconda Copper Mining Co.,* 254 U. S. 590, 595, 596 (1921).

Judge Dorsey in the court below found that there was no evidence of any compliance with the pertinent sections of Article 23. It would appear that the appellant attempts to justify compliance with the statute, insofar as its contract with the Club is

concerned, on the ambiguous language of a resolution passed by the Club's membership on April 15, 1966, which reads as follows:

> "RESOLVED, That, the Directors are authorized to sell the group of lots for 2 million or 1 million if mostly cash, terms to be worked out by the President."

This resolution, passed at the annual meeting of the Club on April 15, 1966, was the sole authority vesting appellee Brazelton, president of the Club, with power to negotiate with the appellant. It is upon this resolution that the appellant would underpin the contract entered into with the Club for the acquisition of all, or substantially all, of its assets. The patent inadequacy of this resolution to qualify as compliance with the statutory requirements was well expressed by the chancellor below:

> "This resolution, in the Court's opinion, amounted to nothing more than a general authorization to the Directors to sell a 'group of lots' at some future indeterminable time; but there is no indication that an *offer to purchase* had been submitted to the Directors — which is the number one requirement set forth in section 66(b) of the Code in order to establish a basis for the required resolution." [Emphasis in original.]

To the aforegoing comment of the lower court we would add, there is not the slightest evidence in the record that any notice setting forth the purpose of a membership meeting, at which the resolution would be presented to the membership for their vote, was ever given; nor does the record reveal any minutes showing any tally of the number of voting members present at the annual meeting or what the vote may have been on the proposed resolution purportedly authorizing the sale; nor is there any evidence that any definitive articles of sale were ever presented for approval to either the board of directors or the voting members.

The appellant sought to counter the failure to comply with Article 23, by advancing the theory that compliance could have been obtained at any time up to February 23, 1968, which was the earliest date of settlement called for in the contract and that

this time had not expired at the time the Club executed its subsequent contract with R.R.R. & G., Inc. on February 5, 1968, nor when suit was filed on February 14, 1968. This proposition is thought to be buttressed with the contention, that as a part of its obligation under the contract, the Club and its officers had the duty to see that there was compliance on the part of the Club with section 66 of Article 23 and in the event that they did not, such dilatory action may not now be used to the derogation of the appellant's rights under the contract. However, upon any reflection it is obvious that such an argument is begging the question as to where such responsibility lies.

Again, returning to the language of *Prince George's Club, supra,* we find two statements of the Court that are significant with regard to the instant case:

> "This Court, in various decisions over a long span of years, has cited and applied 'the general rule that subsisting laws enter into and form part of a contract as if expressly referred to or incorporated in its terms, and the rule embraces alike those provisions which affect its validity, construction, discharge, and enforcement.' *Holmes v. Sharretts,* 228 Md. 358, 367, citing recent decisions. See also *Griffith v. Scheungrab,* 219 Md. 27, citing earlier Maryland cases to the same effect. As was pointed out in *Holmes* and in *Griffith,* Professor Corbin (3 *Corbin Contracts,* Sec. 551) disagrees with the statement that subsisting laws are incorporated into a contract but he recognizes the validity of the general principle recognized in those cases. It is his view that 'words and other symbols must be interpreted in the light of surrounding circumstances; and the existing statutes and rules of law are among those circumstances.' (p. 198)

> "The surrounding circumstances, including the limitation by reason of Code (1957), Art. 23, Secs. 65 and 66, that the Club could not make the sale that Mr. Coates, the vice-president of the broker, had arranged without the approval of two-thirds of its stockholders, make it appear to us that the condition of no

commission without a settlement and payment of the purchase price was applicable if the stockholders did not approve the sale." *Id.* at 607.

\* \* \*

"\* \* \* If it be assumed, as seems most likely, that the individual defendants did not reveal to the broker the limiting provisions of Code (1957), Art. 23, Secs. 65 and 66, nevertheless, the broker was chargeable with knowledge of this limitation, equally with the officers and Board members, \* \* \*." *Id.* at 609.

Where a statute requires that a contract must comply with specific regulations, the courts have consistently held that there must be compliance. In *Webb v. Haeffer,* 53 Md. 187 (1880), a case involving a failure to comply with statutory requirements applicable to a mortgage foreclosure (then under Art. 64, Sec. 14) the Court stated:

"The language of the 14th section is express in its terms, that all mortgage sales shall be made in the *county* or *city* where the mortgaged premises are situated, unless they are situated in more counties than one, and then the sale may be made in either county in which the lands lie. [Emphasis in original.]

"This language is so plain that it can admit of but one interpretation. It is mandatory and binding, and a party, who proceeds under a power authorized by Art. 64, must do so in the mode and manner pointed out in its several sections.

"Parties are ordinarily left free to contract, but they will not be permitted to do so in violation of statute regulations. *Lawrence v. Farmers Loan & Trust Co.,* 13 N. Y. 213; *Elliott v. Wood,* 53 Barb. 305." *Id.* at 190.

Also *Prince George's Club, supra,* and *Patton v. Graves,* 244 Md. 528, 224 A. 2d 411 (1965).

## II

For the reasons we have stated we agree with the lower court's holding that the contract between the appellant and the Club

was invalid and of no legal effect. However, we disagree with the chancellor's holding that the purported contract which the Club entered into with R.R.R. & G., Inc. was a valid contract.

The chancellor in the court below in finding the contract between the Club and R.R.R. & G., Inc. to be a valid agreement, stated:

> "* * * the Court has determined, through examination of the documents of record, that the aforementioned procedures prescribed by the statute [Art. 23, sections 66 and 70] were timely and fully complied with in every detail. * * *."

In addition to the assurance of compliance contained in the language of the court, the R.R.R. & G., Inc. contract contains the following provision which is not found in the appellant's contract:

> "The Club covenants that a corporate resolution made under proper authority and in accordance with the laws of the State of Maryland and By-laws of the Club has or shall be taken as soon as possible and that all individuals in their respective capacity have the legal authority to execute this contract."

However, an exhaustive search of the transcript and record fails to reveal any evidence supporting such compliance as mentioned by the court or as inferred by the contract. In fact, during argument on appeal, counsel for the appellees, as well as the appellant, agreed that there was a minute book of the Club which was available to the court, and which they were of the opinion the court had read. (The appellee, Brazelton, testified that he had the minute book of the Club with him in the courtroom). However, there was never introduced into evidence any qualified copy of any minutes of the corporation, nor was there any testimony which would support this finding by the court. This omission probably comes under the category of supposing those things to have been done, which ought to have been done.

We are of the opinion that once the appellant's contract with the Club had been declared a nullity, it was inappropriate for the court to render a declaration as to the status of the Club's

contract with R.R.R. & G., Inc. On the basis of the evidence in the record, we think the chancellor erred in declaring the R.R.R. & G., Inc. contract to be valid. Accordingly, on the second issue we would remand without affirming or reversing the lower court's declaration as to the validity of the R.R.R. & G., Inc. contract (Maryland Rule 871).

> *Decree affirmed as to the declaration of invalidity of the appellant's contract and remanded without affirming or reversing the declaration as to the validity of the R.R.R. & G., Inc. contract; appellant to pay costs.*