GANNON & SON, INC. *v.* MARGIE B. EMERSON

[No. 147, September Term, 1980.]

*Decided October 13, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*J. Donald Braden* for appellant.

*David Weston Gregory,* with whom were *Downes & Gregory* on the brief, for the appellee.

RODOWSKY, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., dissent. DAVIDSON, J., filed a dissenting opinion at page 458 *infra*, in which ELDRIDGE, J., concurs.

This case involves a mechanic's lien claim based on a home improvement contract. One defense asserted is unenforceability of the contract due to illegality under the Maryland Home-Improvement Law, Md. Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.), Art. 56, §§ 245-269A (the Act). The contract is oral, in violation of § 265(b). Payment of part of the price has been received by the contractor "prior to the signing of a home-improvement contract," in violation of § 261 (a) (15). In our opinion the General Assembly did not intend that the violations involved here should render the oral contract unenforceable.

The appeal has been presented on a statement of the case approved by the trial court. Md. Rule 1026 e. Appellant, Gannon & Son, Inc. (Gannon), entered into a contract with appellee, Margie B. Emerson (Emerson), to supply the materials for and to construct an addition to Emerson's residence. Gannon held a valid license from the Maryland Home Improvement Commission (the Commission) as a home improvement contractor. There was no written contract between the parties. There were payments made by Emerson to Gannon as the construction work progressed. In the course of contract performance, a dispute arose between the parties. Emerson says the workmanship was unacceptable. It is Gannon's position that approximately one-half of the charges for construction and materials remain unpaid. When Gannon brought this mechanic's lien action, Emerson also asserted illegality. Testimony was taken at the show cause hearing held pursuant to Md. Code (1974, 1981 Cum. Supp.), § 9-106 (a) of the Real Property Article. The trial court concluded there was "no genuine dispute as to the material facts that (1) there was no compliance with Sec. 265 of the Act and (2) that there was a violation of Sec. 261 (a) (15) of the Act. Therefore, [Gannon] failed to establish his right to a lien as a matter of law." A

final order denying the lien was entered pursuant to § 9-106 (b) (2) of the Real Property Article. After Gannon appealed to the Court of Special Appeals we issued the writ of certiorari prior to consideration by that court.

The writing requirement of the Act is imposed in § 265, which has four subsections. Subsection (a) reads as follows and contains a saving clause, which we italicize:

> This section shall apply only to home-improvement contracts between a prime contractor and the owner for work upon one-, two-, or three-family dwelling places; or where the contractor is licensed, or is subject to be licensed, in accordance with the provisions of this subtitle, with regard to the home-improvement transaction. *Contracts which fail to comply with the requirements of this section shall not be deemed to be invalid solely because of noncompliance.*

Subsection (b) of § 265 requires that "[e]very home-improvement contract subject to the provisions of this section shall be evidenced by a written agreement and shall be signed by the parties thereto." That subsection then lists eight matters which the "writing shall contain."[1] Subsection (c) provides that the writing shall be legible, shall clearly describe incorporated documents and that "[b]efore any work begins the owner shall be furnished a copy of the written agreement, signed by the contractor."

---

1. The text of that portion of § 265 (b) is:

    The writing shall contain: (1) the name, address, and license number of the contractor, and the names and license numbers of the salesmen who solicited or negotiated the contract; (2) the approximate dates when the work will begin and be substantially completed; (3) a description of the work to be done and materials to be used; (4) the agreed consideration for the work; (5) the number of monthly payments and the amount of each monthly payment stated as a sum in dollars which shall include all finance charges; (6) a limitation of any deposit at the time of execution of the contract to not more than 33 percent of the contract price; (7) a description of any collateral security taken or to be taken for the owner's obligation under the contract; and (8) a notice that all home-improvement contractors and subcontractors must be licensed by the Home-Improvement Commission.

Subsection (d) states that "[n]o salesman or other agent or employee of the contractor shall be authorized to make any changes in the agreement on behalf of the owner."

A list of 15 acts which are prohibited is set forth in § 261 (a). The 15th prohibition is "[t]he demand for or the receipt of any payments prior to the signing of a home-improvement contract." Section 261 (b) then provides:

> Violation of any of the prohibitions of this section (1) shall subject any violator to whom the licensing provisions of this subtitle apply to the administrative sanctions of § 258 of this subtitle; and (2) shall subject any violator, whether or not required to be licensed by this subtitle, to the provisions of § 259 and to criminal prosecution as prescribed in § 268 of this subtitle.

Section 258 of the Act deals with the power of the Commission to refuse to grant a license, or to suspend or revoke a license. A license is required for a person to act in the capacity of a contractor, subcontractor or salesman. § 255 (a). A license may be denied, suspended or revoked if the applicant or licensee has, *inter alia,* "violated any provision of this subtitle . . . ." § 258 (a) (6). The Commission is authorized in § 259, under circumstances therein provided, to seek (1) an injunction and (2) "restitution or an order requiring satisfactory completion of the home-improvement contract."

A knowing and willful violation of "any provision" of the Act, "with respect to which a greater penalty is not otherwise provided by the provisions of [the Act] or by any other law," is a misdemeanor punishable by fine not exceeding $1,000 or imprisonment not exceeding six months or both. This criminal penalty is "in addition to any administrative penalty otherwise applicable thereto . . . ." § 268.

I

Emerson contends that the above-italicized saving clause of § 265 (a) cannot apply in this case because here there has

been a total failure to furnish any writing whatsoever. Emerson relies on *Harry Berenter, Inc. v. Berman,* 258 Md. 290, 265 A.2d 759 (1970) which held unenforceable a mechanic's lien claim by a home improvement contractor who was unlicensed. The licensing requirement for contractors is imposed by § 255 (a), but the contractor in *Berenter* sought protection in the saving provision of § 265 (a). In rejecting that contention we said *(id.* at 297, 265 A.2d at 763) (emphasis in original; capitals supplied):

> The legislative intent disclosed by § 265 was, in our opinion, that a contract should not be invalidated *solely* by noncompliance with the rather detailed, but in many instances, rather minor requirements set out in § 265 itself. It will be observed that the "saving clause" is limited to noncompliance with "the requirements of *this section", i.e.,* § 265 . . . . It was thus intended by the General Assembly to limit the saving clause in subsection (a) to the matters of FORM and content set out in the following subsections and not to extend it to the whole *subtitle.*

While "in many instances" the requirements of § 265 may be minor, the saving clause applies not only to matters of content, but also to the matter of form itself, namely, that the contract be written. This requirement of § 265, even if not viewed as minor, is literally within the saving clause, and *Berenter* does not indicate to the contrary.

Nor can we construe the term "contracts," when used as the subject of the saving clause, to mean exclusively writings. "Home-improvement contract," as defined in § 249 (f) of the Act, is "an agreement, whether oral or written . . . ." While this definition undoubtedly reflects a drafting technique intended to prevent circumvention of the Act through the use of oral contracts, the effect of the definition is to embrace within the saving clause oral as well as written contracts. Saving both oral and defectively written contracts from invalidity due to the failure to comply with § 265's requirements parallels the requirement that there be a

writing, as well as those requirements relative to the content of the writing.

Legislative history also reflects that violation of the provisions of § 265, including the requirement of a writing, was not to result in unenforceability.[2] The Act originated from the work of the Governor's Commission to Study the Home Improvement Industry in Maryland which was chaired by Honorable H. Kemp MacDaniel, then a member of the House of Delegates and now a judge of the Court of Special Appeals. In its report of December 28, 1961 that Commission presented a preliminary draft of a home improvement law. That draft required home improvement contracts to be in writing and would have provided in proposed § 21 (c) that oral contracts were "voidable at the option of the owner." Public hearings were held on the preliminary draft prior to the Commission's report to the 1962 session of the General Assembly. When introduced as House Bill 75 of that session, the bill reversed the earlier approach to the consequences of a failure to provide a written contract. In place of an owner's option to void an oral contract, the saving clause, in the exact language in which it appears today in § 265 (a) of the Act, appeared in § 261 (a) and was enacted as part of Chapter 133 of the Acts of 1962. Also, subsection (c) of § 261, as introduced in House Bill 75, read that "[b]efore any work begins *and before* the owner *shall be bound to the agreement, he* shall be furnished a copy of the written agreement, signed by the contractor . . . ." (Emphasis supplied.) The italicized words were deleted in the course of passage. That deletion conformed the bill to the intent of the saving clause of subsection (a) by permitting an owner to be bound, even if he had not been furnished a copy of the written agreement.[3]

**2.** We deal here solely with the question of unenforceability due to illegality. The record in this case does not present any question of whether the oral agreement was too vague and indefinite to form an enforceable contract.

**3.** The bill, in § 261 (d), contained a sentence reading: "In the event of changes, corrections, or amendments to an agreement, a written memorandum, signed by the parties thereto is required, and a copy thereof shall be given the owner." This sentence was also stricken before enactment.

The Act's contract requirements section (§ 261 in the 1962 enactment and renumbered as § 265 by Ch. 827 of the Acts of 1963) initially established a four element test for a home improvement contract to which the section applied. It was a contract:

(1) "for work upon one, two, or three family dwelling places"

(2) "where the aggregate contract price exceeds $300 and"

(3) "some consideration is payable by the owner prior to completion of the work; and"

(4) "where the contractor is licensed, or is subject to be licensed, in accordance with the provisions of this subtitle . . . ."

These elements have been the subject of legislative attention over the years. As the elements have been amended through the process of repealing and re-enacting subsection (a), the saving clause has been re-enacted as well.

The second element of the test, *i.e.,* an aggregate contract price exceeding $300, was companion to a provision in § 256 (3) of the 1962 Act. This was the "handyman" exemption which excluded from the licensing requirements the contractor on any home improvement where the contract price was less than $300. Chapter 721 of the Acts of 1965 reduced the contract price for the handyman exemption from $300 to $200, and reduced from $300 to $200 the contract price used to measure the applicability of § 265. The effect was to enlarge the scope of § 265 of Art. 56.

Chapter 721 of the 1965 Laws also eliminated the third element of the test for applicability of the writing requirement. Theretofore, if all of the consideration from the owner was payable on completion of the work, no writing was required for a home improvement contract. Payment on completion contracts were included by Chapter 721 within the coverage of § 265. But Chapter 721 also re-enacted the saving clause. Thus, enlarging the class of contracts subject to the writing requirement also enlarged the class of contracts subject to the saving clause.

Section 265 (a) was further amended by Chapter 78 of the Acts of 1973. This amendment changed from "and" to "or" the conjunctive which introduced the final criterion for that section's applicability. The saving clause was re-enacted as part of this 1973 change.

In 1978, by Chapter 612 of the Acts of that year, the "handyman" exemption from licensing was eliminated. That enactment also eliminated any minimum price from the standards for § 265 applicability. The effect was to require that a contract be in writing, no matter how small the amount. But Chapter 612 of the Acts of 1978 also re-enacted the saving clause and thereby expanded its effect coequally with the expansion in the scope of the writing requirement.

As the Act stands today, a plumber who comes to the home in order to repair a leaking faucet which requires only a replacement washer should prepare, sign and deliver to the owner a written contract which contains all of the elements required by § 265 (b).[4] If he fails to do so, upon complaint by the owner to the Commission, and dependent upon the exercise by the Commission of its discretion, the contractor could be subject to an administrative hearing, to administrative sanctions and, in an appropriate case, to the civil and criminal sanctions under §§ 259 and 268 of the Act. But clearly the General Assembly did not intend, in addition, that all oral contracts be unenforceable on the ground of illegality. The Legislature has repeatedly re-enacted the saving clause with each enlargement of the scope of the writing requirement. That express validation has been and is an integral part of the statutory scheme. We hold that the saving clause applies even if the home improvement contract is wholly oral. Thus, the absence of any writing at all in the matter at bar was not in and of itself a ground for the dismissal of Gannon's mechanic's lien claim.

---

4. See footnote 1, *supra.*

## II

Emerson next argues that Gannon has additionally violated § 261 (a) (15) by receiving "payments prior to the signing of a home-improvement contract." The owner correctly points out that the saving clause in § 265 (a) applies only to the failure to comply with the requirements of § 265 and that we said in *Berenter* that "a contract may well be invalid for reasons other than for noncompliance with the provisions of § 265, including the failure to obtain a license as required by other provisions of the subtitle." 258 Md. at 298, 265 A.2d at 764. The issue here is not whether the saving clause under § 265 embraces a violation of § 261 (a) (15). It is whether Gannon's violation of § 261 (a) (15) carries, in addition to his exposure to the statutory sanctions, the consequence of unenforceability on the ground of illegality. The trial court held that § 261 (a) (15) "manifests the intention of the legislature not only to impose criminal sanctions for failure to comply with Sec. 265 but also to make oral home-improvement contracts invalid and unenforceable. In support Restatement of Contracts § 580 (1932) was cited which states the rule, in relevant part, to be:

> (1) Any bargain is illegal if either the formation or the performance thereof is prohibited by constitution or statute.
> (2) Legislative intent to prohibit the formation of a bargain, or an act essential for its performance, may be manifested by
> . . .
> (c) Imposing a penalty . . . for doing an act that is essential for the performance thereof . . . .

Comment *a* to § 580 notes that the "[l]egislative intent must be sought in each particular case, and though it is generally true that the imposition of a penalty for . . . performing an act that is the subject matter of the bargain makes the bargain illegal, that is not invariably the case." As this Court said in *Lester v. Howard Bank*, 33 Md. 558, 565 (1871),

> [T]he rights and remedies of parties growing out of prohibited contracts are to be determined by the construction of the statute itself according to the well established rules of interpretation, and if it shall appear that it was not the intention of the Legislature to declare the contract void, although made against the prohibition this *intention* will be gratified, even if it should contravene some general rule of law. [Emphasis in original.]

When enacted in 1962 the Act did not prohibit demanding or receiving any payment prior to the signing of the home improvement contract. Section 258 of the original Act gave the Commission power to refuse to issue, to suspend or to revoke a license issued under the Act upon a finding of a violation of any provision of the Act or upon a finding that the licensee was performing or attempting to perform any one of a list of 13 prohibited trade practices. By Chapter 827 of the Acts of 1963 the first 12 prohibited acts on this list were moved to § 261 (a) and two additional prohibited practices were added. At that time subsection (b) of § 261 was enacted providing that violation of the prohibitions of that section would subject the violator to administrative sanctions before the Commission, and, whether or not he was required to be licensed under the Act, to criminal prosecution. The 15th prohibited act, *i.e.,* the demand for or the receipt of any payments prior to the signing of any home improvement contract, was added to the list of § 261 (a) by Chapter 126 of the Laws of 1974. This was the only modification to the Act made by Chapter 126.

The thrust of the prohibition of § 261 (a) (15) is at the demand or receipt of payment, when this occurs prior to signing of a home improvement contract. Section 261 (a) (15) seems to assume, consistent with § 265, that there will be a writing at a later time. Under § 265 (c) the latest time for a writing is just prior to commencement of the work. That is the time by which a written agreement, signed by the contractor, must be delivered to the owner. Prior to 1974 the contractor who started work without furnishing a written

contract was subject to administrative and criminal sanctions, but there was no violation by a contractor who accepted payment in advance of a written contract so long as he supplied the writing before the work started. One effect of § 261 (a) (15) is to prohibit the latter conduct, and make the demand or receipt of payment, under such circumstances, subject to administrative, criminal and today, under § 259, civil suit sanctions.

If, however, § 261 (a) (15) were construed as doing more, and as rendering illegal so much of the consideration as is paid prior to the writing, then results would be achieved which we do not believe were intended by the General Assembly.

First, with respect to contracts which are wholly oral, we have demonstrated in Part I that the legislative intent was to have the saving clause apply. It is true that the saving clause literally only reaches noncompliance with § 265. But if § 261 (a) (15) were construed to render unenforceable those contracts which involve its violation, no oral contract could ever be enforceable. Any oral home improvement contract in which the consideration from the owner to the contractor is a promise to pay money *always* involves performance of the 15th prohibited act by the contractor when he demands or receives payment pursuant to the oral contract terms. This is the case if the oral contract provides for payment only after completion, or for payment by some combination of a deposit, one or more progress payments and a balance on completion. To interpret § 261 (a) (15) as embodying a policy of contract unenforceability for its violation would produce a partial repeal by implication of the saving clause.

In *Mayor of Baltimore v. Clerk of the Superior Court,* 270 Md. 316, 319, 311 A.2d 261, 263 (1973) we said:

> It is well settled in this State that when two acts of the General Assembly covering similar subject matter make no reference to each other, if it is at all feasible, they will be construed so as to give as full an effect to each other as possible. [cit. om.] In order

for one statute to alter or limit another, the intention of the Legislature to do so must be clear and manifest; otherwise, the requirements of one will be construed as embodying the provisions of the other. In such a situation, the second statute will not be considered as a substitute for the first regardless of the order in which they were enacted.

Repeals which are not express will not be found "unless demanded by irreconcilability or repugnancy." *City of Bowie v. Washington Suburban Sanitary Commission,* 249 Md. 611, 618, 241 A.2d 396, 400 (1968). "A [later] statute should not be held to repeal by implication an earlier one 'unless there is some express reference to the previous statute, or there is a manifest inconsistency in the two statutes, or their provisions are so repugnant that they cannot stand together.'" *Department of Natural Resources v. France,* 277 Md. 432, 460, 357 A.2d 78, 94 (1976) (quoting *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55, 106 A.2d 103, 107 (1954)). In the matter at bar, there would be no inconsistency between § 261 (a) (15) and § 265 (a) of the Act if § 261 (a) (15) is not given a judicial construction to carry contractual unenforceability as a further consequence of its violation.

A construction of § 261 (a) (15) which does not judicially add contract unenforceability to the sanctions for violation of that prohibition set forth in § 261 (b), and thereby does not conflict with the saving clause, is also consistent with Chapter 612 of the Acts of 1978. Chapter 612 repealed and re-enacted § 261 (a) with amendments, which are not pertinent here, and repealed and re-enacted § 265 with amendments, one of which was the deletion of the $200 minimum contract price which theretofore was required in order to trigger the writing requirement. Thus we find in Chapter 612 a repeal and re-enactment of both prohibition 15 and the saving clause. This strongly indicates that the General Assembly did not view the two provisions as irreconcilable and appears to negate the conclusion of the trial court in this case that prohibition 15 manifests a

legislative intent to make oral home improvement contracts invalid and unenforceable.

Another indication that § 261 (a) (15) was not intended to bear a construction of contract unenforceability for its violation is the potential effect of such a construction on certain written contracts. Section 265 (b) requires the written contract to contain, *inter alia,* "a limitation of any deposit at the time of execution of the contract to not more than 33 percent of the contract price . . . . If a one-third deposit is taken before the contract is signed, and then the contract is executed before any work is performed, there is a violation of the literal prohibition of § 261 (a) (15).[5] If one-third of the consideration is illegal, is the written promise to pay the balance of the consideration unenforceable? Restatement of Contracts (Second) (Tent. Draft No. 12, 1977), which uses the term "unenforceable" in lieu of "illegal," states the general rule as follows:

§ 326. WHEN REST OF AGREEMENT IS ENFORCEABLE.

(1) If less than all of an agreement is unenforceable under the rule stated in § 320, a court may nevertheless enforce the rest of the agreement if

(a) the rule stated in § 325 is not applicable,[6] and

(b) the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.

(2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term

---

**5.** Any coexisting violation of § 265 (b) is arguably within the saving clause.

**6.** § 325. WHEN AGREEMENT IS ENFORCEABLE AS TO AGREED EQUIVALENTS.

If the parties' performances can be apportioned into corresponding pairs of part performances so that the parts of each pair are properly regarded as agreed equivalents and one pair is not offensive to public policy, that portion of the agreement is enforceable by a party who did not engage in serious misconduct.

obtained it in good faith and in accordance with reasonable standards of fair dealing.

In most, if not all, home improvement contracts, a portion of the price paid in advance of the written contract would be an essential part of the agreed exchange. We think it highly unlikely that the General Assembly intended that the contractor,[7] who had fully performed, should forfeit the balance of the purchase price because some part of the price was paid before the contract was reduced to writing.

Many home improvement jobs are sold through salesmen, who do not have authority finally to bind the contractor, and many home improvement jobs are subject to approval of the credit of the owner. The Commission has adopted a regulation which deals with the taking of deposits prior to home improvement contract formation by contractor approval. COMAR 09.08.01.35, effective June 1, 1979, 6 Md. Reg. 978-79. It provides:

.35 Contracts Subject To Approval of Licensee.

A. Every home improvement contract which contains a stipulation or condition or which is represented to be that the contract is subject to the approval of the contractor before it becomes binding or any other language requiring prior approval before acceptance shall state that approval or disapproval of the contract shall be made within 10 working days from the date of the contract. The owner shall be duly informed, in writing, by the contractor of the decision approving or disapproving the contract within that time.

B. If the home improvement contract described in §A is not approved, money or other collateral tendered as a deposit or down payment to a contractor, salesman, or any other person shall be returned to the owner within 3 working days of the date of disapproval, and not later than 13 working days from the date of the contract.

---

7. *E.g.,* a painter who gets part payment in advance in order to buy paint.

This regulation seems to contemplate that in those transactions in which the contractor approves and thereby forms a binding contract, the previously received deposit is retained and credited against the contract price. If "signing of a home-improvement contract," as the phrase is used in § 261 (a) (15), means that the home improvement contract must be formed, in writing, before any payment is received, and if failure to do so renders at least that portion of the consideration illegal, then the Commission has by regulation implicitly encouraged violation of the Act. And if unenforceability of the entire contract is the consequence of the violation, then the Commission would be misleading contractors to proceed to expend labor and materials for which they could not be paid. Whatever the proper interpretation and interrelation of this regulation may be to the Act, on which we express no opinion, it is clear that the regulation is more consistent with the Act if § 261 (a) (15) is not construed to render unenforceable a contract in which consideration has been obtained by the contractor before the contract is signed.

For all of the foregoing reasons, and particularly because of the peculiar interrelation between § 261 (a) (15) and the saving clause in the case of oral contracts, we hold that Gannon's violations of § 265 and of § 261 (a) (15) result in exposure to administrative sanctions, to possible Commission initiated civil proceedings and to possible criminal prosecution, but did not work a forfeiture of his claim to the balance of the purchase price.

> *Judgment of the Circuit Court for Queen Anne's County reversed and matter remanded to that court for further proceedings. Costs to abide the result.*

*Davidson, J., dissenting:*

The Maryland Home-Improvement Law, Md. Code (1957, 1979 Repl. Vol. & 1981 Cum. Supp.), Art. 56, § 245 through

§ 269A is a regulatory statute designed to protect the public. *Harry Berenter, Inc. v. Berman,* 258 Md. 290, 294, 265 A.2d 759, 762 (1970). Section 255 requires persons engaged in the home improvement business to be licensed. Section 261 (a) prohibits certain acts, including "the demand for or the receipt of any payments prior to the signing of a home-improvement contract," and §§ 246 and 261 (b) provide administrative and criminal penalties for the willful performance of any prohibited acts. Section 265 establishes minimum requirements applicable to a limited class of home improvement contracts, including the requirement that this class of contracts be written and signed by the parties.

In *Berenter,* this Court considered whether a home improvement contract entered into by an unlicensed contractor was enforceable. It held that

> "contracts made by unlicensed persons subject to the statute [Maryland Home-Improvement Law] are illegal as against public policy and will not be enforced." *Berenter,* 258 Md. at 298, 265 A.2d at 764.

In reaching this conclusion, this Court specifically addressed a contention that § 265 (a) indicated a legislative intent that contracts of unlicensed persons under the Maryland Home-Improvement Law were enforceable. The Court there said:

> "The legislative intent disclosed by § 265 was, in our opinion, that a contract should not be invalidated *solely* by noncompliance with the rather detailed, but in many instances, rather minor requirements set out in § 265 itself. It will be observed that the 'saving clause' is limited to noncompliance with 'the requirements of *this section', i.e.,* § 265. (Emphasis supplied.) It was thus intended by the General Assembly to limit the saving clause in subsection (a) to the matters of form and content set out in the following subsections and not to extend it to the whole

*subtitle.* This intention is also indicated by the use of the phrase 'shall not be deemed to be invalid *solely* because of noncompliance.' (Emphasis supplied.) The clear implication is that a contract may well be invalid for reasons other than for noncompliance with the provisions of § 265, including the failure to obtain a license as required by other provisions of the subtitle.

"*We must assume, in seeking to discover the legislative intent, that the General Assembly was cognizant of the existing law and legislated with the existing law in mind.* See *Giant Food, Inc. v. Gooch,* 245 Md. 160, 165, 225 A.2d 431, 434 (1967) and prior cases therein cited.

"The General Assembly would, therefore, be aware of our decision in *Goldsmith,* decided on February 23, 1918, when it enacted the original Maryland Home Improvement Law by the Laws of 1962, Chap. 133, effective June 1, 1962. The original statute has been substantially amended since its original passage in 1962. It was amended in 1965 by the Laws of that year, Chapters 719, 720, 721 and 850, all effective June 1, 1965, so that the General Assembly was aware of our decision in *Snodgrass,* decided October 9, 1963, when it passed those amendments. The original statute was further amended by the Laws of 1966, Chapters 634 and 647, both effective June 1, 1966, so that the Legislature was cognizant of our decision in *Smirlock,* decided June 8, 1964. Finally, the statute was further amended by the Laws of 1969, Chap. 292, effective July 1, 1969, so that the General Assembly was aware of our decision in *Thorpe,* decided March 5, 1969. As we have set forth above, all of these decisions indicate that when a statute is regulatory in nature, this Court will assume, *if the legislature does not indicate otherwise,* that contracts made by unlicensed persons subject to the statute are illegal as against public policy and

will not be enforced. *If the legislature had intended to change this established rule of law it would doubtless have provided in the original statute or in the subsequent amendments that such contracts would be legal and enforceable.* We conclude that the General Assembly intended no change in the existing law in this regard." *Berenter,* 258 Md. at 297-99, 265 A.2d at 763-64 [emphasis added].

I recognize that *Berenter* involved a violation of § 255, prohibiting persons from engaging in the home improvement business unless licensed, while this case involves a violation of § 261 (a) prohibiting the receipt of any payments prior to the signing of a home improvement contract. In my view, however, the *Berenter* rationale is dispositive in establishing that the Legislature did not intend a contract to be enforceable if performed in violation of statutory prohibitions.

Applying the *Berenter* rationale, I assume that the Legislature is cognizant of the existing law and legislates with the existing law in mind. When the Legislature amended the statute by enacting chapters 129 and 289 of the 1980 Laws of Maryland, effective 1 July 1980, it was aware of the legal principle established by this Court's decisions in a series of cases that held that when a statute is regulatory in nature, if the Legislature does not indicate otherwise, contracts made or performed in violation of its prohibitions are illegal as against public policy and will not be enforced. *See, e.g., Queen v. Agger,* 287 Md. 342, 346, 412 A.2d 733, 735 (1980) (contract for fee for health care service greater than that approved by Workmen's Compensation Commission); *Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 398-400, 252 A.2d 849, 854-55 (1969) (contract for sale of corporate assets); *Thorpe v. Carte,* 252 Md. 523, 528-30, 250 A.2d 618, 621-22 (1969) (contract for division of commission between licensed real estate broker and unlicensed individual); *Van Meter v. Wilkinson,* 187 Md. 492, 496-99, 50 A.2d 557, 559-60 (1947) (contract by retired army officer to assist in prosecuting a claim against United

States); *Webb v. Haeffer,* 53 Md. 187, 190 (1880) (agreement to hold mortgage sale outside county where mortgaged property situated). *See also* Restatement (Second) of Contracts §§ 580, 598, Comment a (1932); 3 Pomeroy, *Equity Jurisprudence* § 940 at 728 (5th ed. 1941). Again, applying the *Berenter* rationale, I assume that if the Legislature had intended to change this established rule of law it would doubtless have provided in the original statute or in the subsequent amendments that contracts would be legal and enforceable even though performed in violation of express statutory prohibitions. I can only conclude, as did this Court in *Berenter,* that the Legislature intended no change in the existing law in this regard.

The majority here recognizes that under *Berenter* a contract that violates § 255 is unenforceable, but nevertheless holds that a contract that violates not only § 265 but also § 261 (a) (15) is enforceable. In my view, the majority has ignored the plain language of the statute and this Court's previous decision in *Berenter,* and has engaged instead in an unnecessary, convoluted, and tortured examination of legislative history in its effort to reach a result directly contrary to the purpose of the law. The purpose of the Maryland Home-Improvement Law is to protect the homeowner. I cannot conceive how that purpose can be achieved by requiring a victimized homeowner to pay for a contractor's performance of a criminal act, warranting suspension or revocation of the contractor's license. Accordingly, I respectfully dissent.

Judge Eldridge authorizes me to say that he concurs in the views herein expressed.